# Lacy, *et al. v.* Meador.

### *Assumpsit.*

(Decided Dec. 22, 1910. Rehearing denied Jan. 12, 1911.
54 South. 161.)

1. *Appeal and Error; Harmless Error; Deposition; Suppression.*—Where commission was issued for the taking of the depositions of P. G. W., residing at a certain place, and the depositions taken were those of P. C. W., residing at such place, and the commissioner taking the deposition certified that he was the only person named W. residing at that place, and it appeared from the answer of the witness to the interrogatories that he had undertaken the matter inquired about, and there was nothing in the record to show that he was not the person intended, the refusal to suppress the deposition was harmless error, since it clearly appeared that if the deposition had been suppressed and another commission issued to examine P. C. W., the same person would have been examined that defendants supposed was to have been examined when they filed their cross interrogatories.

2. *Sales; Contract of; Evidence.*—Where the action was for the price of materials furnished to a third person on the strength of a letter from defendant, which letter had been lost, and the construction given the letter by plaintiff was that it was a promise by defendant to pay for materials furnished such third person, and the defendants denied plaintiff's version of the letter, it was competent for the plaintiff to introduce subsequent letters written by the defendant

[Lacy, et al. v. Meador.]

during the time the account was being contracted and afterwards, as affording corroboration of plaintiff's version of the language of the original letter, and as tending to show a recognition by defendant of the debt as having been originally contracted upon their authority and credit; though the letters in themselves were insufficient to fasten liability under the statute of frauds.

3. *Evidence; Hearsay.*—Where it appeared that the witness had heard the letter read before it was mailed, but it did not appear when or by whom it was read, such witness was not competent to testify as to the contents of the letter, although he was in the employ of defendant when the alleged letter was written, since such evidence was mere hearsay.

APPEAL from Calhoun Circuit Court.

Heard before Hon. JOHN PELHAM.

Assumpsit by D. J. Meador against D. B. Lacy and others. From a judgment for plaintiff defendant appeals. Affirmed.

BLACKWELL & AGEE, for appellant. The deposition should have been suppressed.—*McCutchins v. Loggins,* 109 Ala. 465; *East v. Pace,* 57 Ala. 523. The court erred in admitting the letters written after the original letter claimed as the authority for letting the contractors have the goods. The court erred in excluding Neville's version of the letter he heard read.—*Lasseter v. Blackwell,* 128 Ala. 143. The court should have given the defendant the affirmative charge.—*Ala. C. Co. v. Meador,* 143 Ala. 336; 9 Cyc. 578; *Robinson v. Bullock,* 58 Ala. 618.

KNOX, ACKER, DIXON & BLACKMON, for appellee. The court properly declined to suppress the deposition.—*Carson v. Boyd,* 20 Ala. 112; *Jordan v. Hazzard,* 10 Ala. 221. The letters were admissible in evidence, and the court properly limited their effect.—*Eskridge v. Ditmars,* 51 Ala. 245; *Collins v. Mountain,* 53 Ala. 201; *Lewis v. Lee County,* 66 Ala. 480. The evidence of the witness as to the letter he heard read was hearsay. Counsel discuss other assignments of error, but without citation of authority.

SAYRE, J.—Plaintiff (appelee) caused affidavit to be made and commission to issue for taking the deposition of one P. G. Williams, described in the affidavit as residing at Myrtlewood in Marengo county. The commissioner took the deposition of P. C. Williams, certifying that he was the only person of the name of Williams residing at Myrtlewood. Before entering upon the trial the defendant moved the court to suppress the deposition on the ground that the witness examined was not the person whose deposition had been sought by the interrogatories. The court examined the deposition and overruled the motion. That ruling is made the subject of an assignment of error.

The direct interrogatories sought information in respect to a particular occasion when the witness, acting as agent for the plaintiff and seeking to collect a part of the account in suit, went to the camp where the defendant Lacy was, and there received the check payable to plaintiff. Plaintiff sought to prove admissions by Lacy on that occasion. Defendant cross-examined the witness fully on the points proposed by the direct interrogatories. The witness showed by his answers that he had undertaken the business inquired about, and testified to what had been said and done on that occasion. It is barely possible, of course, so far as the nature of the transaction is concerned, that some other Williams may also have undertaken a similar business for the plaintiff and become apprised of similar facts. But there is no suggestion in the record that such was the case. Nor is there suggestion, apart from the misstatement of the witness' middle initial, that the defendant was misled as to the identity of the witness to be examined or the facts inquired about. On the contrary, it seems clear that if the deposition had been suppressed, and further opportunity given the plaintiff to procure

a commission for the examination of P. C. Williams, the same person would have been examined that defendants supposed was to be examined when they filed cross-interrogatories, and with an identical result. In other words, defendants were not misled. In this state of the record it seems impossible to base an affirmance of error upon any substantial ground.—*Parsons v. Boyd,* 20 Ala. 112. And the same result must follow whether the testimony of Meador and the extra official certificate of the commissioner be taken into consideration or not. We have examined *McCutchen v. Loggins,* 109 Ala. 465, 19 South. 810, and *East v. Pace,* 57 Ala. 523, without finding anything compelling a departure from the conclusion reached.

Defendants, D. B. Lacy and Mrs. Susan E. Jones, were sued as partners under the firm name of the Alabama Construction Company. The partnership was not denied. The defendants pleaded the general issue, payment, and the statute of frauds in due form, alleging that the debt for the recovery of which the suit was brought was the debt of John E. Lacy. It appeared that defendants had taken a contract for the construction of a part of the Myrtlewood extension of the Louisville & Nashville Railroad, and had sublet the contract to John E. Lacy. Plaintiff had let John E. have merchandise and supplies, including timber, which were used in and about the execution of the contract. The obligation of defendants was based upon a letter which D. B. Lacy had written to plaintiff. The letter was shown by satisfactory proof to have been lost, and the chief controversy between the parties related to its terms and their legal effect; that is, their sufficiency as an authority to John E. Lacy to buy goods on the credit of defendants. Meador's version was as follows.: "I have today signed up a contract to build the two miles' extension. I have

shipped a lot of feed grain stuff. Please store the same and I will pay for it. My brother, John E. Lacy, will be down there and will have charge. Any courtesies or favors you may show him, and any assistance you may render him or aid you give him will be much appreciated, and we will pay for same." When the witness was asked to state what part of the letter had reference to payment for supplies, he testified that the letter stated: "My brother, John E. Lacy, will have charge of the outfit. Any courtesies or favors you may show him, or any assistance you may render him (or something of that kind), will be appreciated, and we will pay for it. Any assistance you may render him or help furnished him I will pay for the same (or any assistance you may render him or help will be promptly paid by me)." The defendants objected to the admission of proof of this letter on the ground that its terms did not authorize plaintiff to sell goods to John E. Lacy on the credit of defendants, and later on requested the general affirmative charge on the same theory. Adverse rulings by the court are assigned for error.

No question arises in respect to the liability of defendants for storage charges and timber furnished to and used by John E. Lacy in the construction of the road. Defendants admitted their responsibility for those items, and showed payments more than sufficient for their discharge. Defendants claimed that payments over and above the amount necessary to discharge the indebtedness for storage and timber were made by the mistake of their bookkeeper, and should not be construed as an admission of liability for other items. The question is about their liability for supplies, groceries, clothing, and medicines furnished to John E. Lacy.

It is argued for the appellants that the letter as testified to by plaintiff is too indefinite to stand as author-

ity for furnishing goods to John E. Lacy on the credit
of defendants. It is said that would be a forced con-
struction which would construe the letter written by
defendants to plaintiff as an unlimited letter of credit.
When the surroundings of the parties at the time are
considered it seems easy, if not necessary, to construe
a promise to pay for assistance or aid to be furnished
John E. Lacy as including supplies such as plaintiff
did furnish. If considerations of prudence would have
suggested a more limited credit, that can have but lit-
'tle influence in turning the language used away from
a meaning which under the circumstances was natural
enough. John E. Lacy's authority to purchase on the
credit of defendants rested upon the lost letter, it may
be conceded. To say the least, it cannot be denied that
the letter as testified to by plaintiff would bear the con-
struction put upon it by him. That construction was
consistent with the terms as they appeared in his tes-
timony. So then, it was competent to prove subsequent
acts and writings of the defendants which tended to
show that they construed the letter as plaintiff did. The
language of the lost letter was in dispute too, and it
was well to let the jury look to subsequent letters writ-
ten by defendants during the time the account in suit
was being contracted, and afterwards, though insuffi-
cient in themselves to fasten liability by reason of the
statute of frauds, as tending to show a recognition by
the defendants of the debt as having been originally
contracted upon their authority and credit, thus afford-
ing corroboration of plaintiff's version of the language
of the original letter and a consistent interpretation by
the parties; and to these purposes, as we understand
the record, the evidence respecting subsequent letters
was limited by the trial court. Defendants not only
denied plaintiff's version of the original letter, but ad-

duced evidence which went to explain subsequent letters and payments on a theory consistent with their nonliability for the items in controversy. Out of this conflict there was no difficulty in the way of the conclusion that the correspondence subsequent to the original letter was admissible upon the question whether defendants had made in that letter an original promise to pay for supplies which might be furnished to John E. Lacy, and that question, along with the general result, was properly referred to the jury for decision.

Defendants brought forward a witness who undertook to corroborate D. B. Lacy's version of the letter heretofore noted; a version which, if accepted by the jury, would have relieved defendants of liability. This witness had been in the employment of the Alabama Construction Company at the time the letter was written. The letter was dictated by D. B. Lacy, who was illiterate, to John E., and the witness had heard the letter read before it was mailed. Just how otherwise or when or by whom it was read did not appear. Under these circumstances the court sustained plaintiff's objection to the witness' testimony as to the contents of the letter; the theory of the court's action being that the witness did not appear to have acquired this knowledge of the contents of the letter from the letter itself. Apart from those considerations affecting its weight, which was for the jury, the evidence was of importance to the defense, and its exclusion, if erroneous, must work a reversal of the judgment. The case of *Laster v. Blackwell,* 128 Ala. 143, 30 South. 663, is urged as an authority for reversal. On the other hand, it is suggested that what was said in that case is not in line with cases in which this court has ruled that notwithstanding a case made for the admission of secondary evidence, the best evidence obtainable must be offered

(*Harvey v. Thorpe,* 28 Ala. 250, 65 Am. Dec. 344; *Edisto Phosphate Co. v. Standford,* 112 Ala. 493, 20 South. 613), and that the evidence of a witness who has read a paper is better than that of one who has heard it read only. In the cases last referred to it was held that a copy of a paper writing is better evidence of its contents than parol proof. But that question does not occur in the case at hand. There are no legal preferences affecting the admissibility of one sort of parol evidence as against another. When one piece of parol is spoken of as better than another, we intend only to state those considerations which give it greater weight or credibility. The question here is whether the testimony offered should have been excluded as hearsay. No doubt it was hearsay, though the court seems not to have taken this view of similar testimony in *Laster v. Blackwell, supra.* In that case a nonsuit was set aside for error in excluding the entire evidence. In the course of the opinion it was said that the fact that a witness' knowledge of a deed is derived from hearing the deed read instead of his own inspection does not render his testimony as to its contents incompetent—citing *Morris v. Swaney,* 7 Heisk. (Tenn.) 591; *Apperson v. Dowdy,* 82 Va. 776, 1 S. E. 105; *Everitt v. Everitt,* 41 Barb. N. Y.) 385. In a second appeal in that case (*Laster v. Blackwell,* 133 Ala. 337, 32 South. 166) the same testimony was referred to as being of a "character not very satisfactory, and of doubtful competency." In *Everitt v. Everitt,* 41 Barb. (N. Y.) 385, it is certain that a copy of the will to be established was produced in court, and it is doubtful that the court intended more than that the fact that a witness had heard a will of the same import read was a circumstance going to prove the existence of a will at the time to which the testimony related, rather than proof of its contents. At any rate, the New York court

[Lacy, et al. v. Meador.]

10 years later decided the precise question here involved as did the trial court in this case.—*Nichols v. Kingdom Ore Co.,* 56 N. Y. 618. And a like conclusion seems to have been reached in *Edwards v. Noyes,* 65 N. Y. 126. *Apperson v. Dowdy,* 82 Va. 776, 1 S. E. 105, followed *Morris v. Swaney,* 7 Heisk. (Tenn.) 591, in which the analogy of examined records is invoked, in which cross-reading is not necessary. Mr. Wigmore states the proper rule as follows: "A general principle for a witness' qualification is that he must speak from personal observation of the event or thing to be testified about, and that therefore in general a witness is not qualified who bases his testimony, not on his own personal observation, but on imagination, or inference, or hearsay of others. Upon this principle, then, a person who proposes to testify to the contents of a document, either by copy or otherwise, must have read it. He may not describe its contents merely on the credit of what another has told him, even though his informant purports to have read it aloud in his presence."—Section 1278. The following authorities, cited among others, support the text.—*Edisto Phosphate Co. v. Standford,* 112 Ala. 493, 20 South. 613; *Hooper v. Chism,* 13 Ark. 496; *Probst v. Mathis,* 115 N. C. 526, 20 S. E. 710; *Coxe v. England,* 65 Pa. 212. See, also, *Russell v. Brosseau,* 65 Cal. 607, 4 Pac. 643. The principle is that which requires that a copy must be shown to be a true copy. If it had been shown that the witness heard Lacy dictate the letter, or that he heard it read to Lacy for approval at the time of the writing, doubtless these circumstances would be accepted as a sufficient guaranty of trustworthiness. But that is not the case presented. Our conclusion is that there was no error in excluding the proffered testimony.

One of the letters admitted to the jury was signed "D. B. Lacy, per Grant." Grant was bookkeeper for defendant firm at the time. Another was signed "Alabama Construction Company, by D. B. Grant, President. G."; another by "D. B. Lacy, President"; and still another "D. B. Lacy, President of Ala. Construction Company." Those letters all related to the same general subject. There is no reason to doubt that they were written about the business of the defendant partnership, nor that they were properly admitted as against all the defendants.

We find no error in the record.

Affirmed.

DOWDELL, C. J., and ANDERSON, and EVANS, JJ., concur.