## CIRCUIT COURT OF THE CITY OF RICHMOND

Ronald F. Ware

v.

Chesapeake Corp.

October 24, 1990

Case No. LS-1387-3

By JUDGE T. J. MARKOW

This matter is before the court on the defendant's motion to dismiss for lack of jurisdiction based on the Virginia Workers' Compensation Act, Va. Code Ann. § 65.1-103 (Cum. Supp. 1990). The court, having considered the respective positions of the parties as reflected in their memoranda and arguments, and the depositions provided, finds that the motion should be sustained.

The plaintiff is an employee of Pemberton Corporation (Pemberton), which was subcontracted to erect some scaffolding for Chesapeake Corporation (Chesapeake), a manufacturer of paper, in boiler number four in their West Point plant. While he was unloading and stacking scaffolding pieces to be erected in the firebox of the boiler, he was sprayed with some of the boiler's fuel by an employee of Chesapeake. As a result, he suffered injury for which he was received workers' compensation benefits. He now has filed this suit, bringing a common law action against the defendant.

The defendant argues that the claim is precluded by the Virginia Workers' Compensation Act, which states that when an "owner . . . undertakes to perform or execute any work which is part of his trade, business, or occupation and contracts with any other person (. . . subcontractor) for the execution or performance . . . of the whole or

any part of the work undertaken by such owner," the owner is liable for workers' compensation payments. Va. Code Ann. § 65.1-29 (Repl. Vol. 1987). An owner under these circumstances is referred to as a statutory employer. The statutory employer is shielded from liability for common law torts, as the worker's exclusive remedy is workers' compensation.

The plaintiff argues that he is not precluded from bringing this suit because he is an "other party" as delineated by Code § 65.1-103. "Other parties" were defined in *Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946), as "strangers to the business" of what would otherwise be considered a "statutory employer" because the activity in which they are engaged is not a part of the trade, business, or occupation of the "owner."

As evidence that the work being performed by plaintiff as an agent of Pemberton Corporation was part of the trade, business, or occupation of Chesapeake, defendant points to the circumstance that the work was plant maintenance. The court in *Harrison v. City of Richmond*, 1 Va. Cir. 249, 253 (1982), noted that "it is within the ordinary course of the manufacturing business to have maintenance departments." Chesapeake's maintenance employees comprise approximately thirty percent of its total work force. The projects they carry out are ongoing. Each boiler in the plant must be shut down on an annual basis and scaffolding erected so that the tubes can be "metalized" to stay corrosion and other repairs can be made. If this were not done, the result would ultimately be the demise of the entire business, as the equipment would soon fail, bringing the manufacture of paper to a halt. The maintenance is, then, integral to the trade, business, or occupation of Chesapeake, not a mere peripheral activity.

Further, it is maintenance which meets the *Shell Oil Company v. Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972), test which held that the subcontractor's work must be more than "useful, necessary, or even absolutely indispensable to all the statutory employer's business," it must also be an "indispensable activity . . . *normally* carried on through employees rather than independent contractors." The maintenance employees at the Chesapeake plant had scaffolding projects "going on all the time," according to the deposition of William Gwaltney, mechanical

maintenance foreman in Chesapeake's power plant, indicating that Chesapeake "normally" did that kind of work as a part of its business of operating a paper mill.

The court in *Henderson v. Central Telephone Co.*, 233 Va. 377, 383, 355 S.E.2d 596 (1987), pointed out that "[w]hat [businesses] do on a day-to-day basis provides a reasonably reliable indicator of their trade, business, or occupation." Applying that piece of common sense to the erection of scaffolding at Chesapeake leads to the conclusion that it was a part of the trade, business, or occupation and when the plaintiff was carrying it out, he was a statutory employee.

Even if Chesapeake never did the work with its own employees, that fact alone would not be sufficient to remove it from liability under the Act. As the court indicated in *Henderson*, "[c]ode § 65.1-29 contemplates that an owner . . . can subcontract all of its work yet remain liable under the Act." *Id.* at 381. Plaintiff's attempt to find an exception to that liability because Chesapeake had not erected the scaffolding for boiler number four in the last four or five years but had subcontracted it to Pemberton does not withstand scrutiny.

Plaintiff's reliance on *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), is misplaced. The work being carried on by the contractor there was for construction, not maintenance. Construction was not a normal part of the trade or business of Bassett, which was a furniture manufacturer. Only a few of Bassett's employees possessed construction skills, whereas the erection of scaffolding could be done by any of Chesapeake's maintenance employees since it required no specialized skills. Maintenance is a part of the trade or business of Chesapeake, and it is normally carried on through employees.

Chesapeake's situation is also different from that in *Shell Oil*, which plaintiff cites as supporting his claim. In that case, Shell Oil's business of exploring, digging wells, refining, transporting, and distributing gasoline to dealers was not the same trade, business, or profession as that of a Shell independent dealer who retails gasoline to the general public. Those two activities are easily segregated; however, the erection of scaffolding in a boiler at the Chesapeake plant is an integral process

of the company's maintenance. Once erected, the scaffolding is used for various purposes, some of which are accomplished by other contractors (for instance, the "metalizing" is done by a contractor from Richmond) and some by Chesapeake employees. The erection of the scaffolding for boiler four cannot reasonably be set apart from the balance of maintenance activities carried out as a part of the trade, business, or occupation of Chesapeake.

The defendant's motion to dismiss is, therefore, sustained.