**CIRCUIT COURT OF CAMPBELL COUNTY**

Robert J. Graves,
Adm'r of the Estate of
Christopher Cornell Graves,
deceased

v.

The Bibb Company

July 3, 1992

BY JUDGE J. SAMUEL JOHNSTON, JR.

The question to be answered is a simple one which involves a determination of law and fact. The answer, however, requires a detailed analysis of case law and ultimately turns on a finding of fact. I will discuss and set forth my findings of fact and conclusions of law seriatim.

### I. *Findings of Fact*

The Bibb Company (hereinafter Bibb) is a company engaged in the manufacture of textile products. Bibb did not have a designated department or group of employees which was responsible for "maintenance" or "janitorial" services. Since 1983, maintenance or janitorial services had been provided to Bibb (or its predecessors) by Diversco, Inc., a South Carolina corporation.

Diversco was supervised by one person at Bibb and was staffed with four or five people to discharge the maintenance or janitorial function for Bibb. Diversco provided these services pursuant to a simple contract which called for and price *Janitorial Services, Yards And Ground Maintenance* and *Green Sheet Labor*. Green Sheet Labor was labor expended or tasks performed which were outside the ambit of the employment contract. Green Sheet Labor called for a special hourly rate for services rendered.

Christopher Graves was hired by Diversco on June 28, 1989, and was killed (by drowning) while cutting the grass around a sludge

digester system. The digester system was part of Bibb's manufacturing process. The digester is a concrete pond fourteen feet deep and approximately ninety feet in diameter. Mr. Graves was riding a lawn mower owned by Bibb and furnished to him by Bibb when he was killed.

It is telling to note the relationship of Diversco and its employees to Bibb and its employees. The Diversco employees were supervised by and reported to Mike Dabbs, the Diversco supervisor. This supervision was shared, albeit informally, with Early Wade, an employee of Bibb. For instance, when Dabbs was away from the plant, Wade assumed the task of supervising the Diversco employees and seeing that the assigned tasks were performed. The Diversco employees were trained by both Dabbs and Wade. Mr. Dabbs was provided an office by Bibb, and Bibb paid the phone bills incurred by Dabbs. All of the equipment used by Diversco was owned and maintained by Bibb. The Diversco employees worked three shifts, as did the Bibb employees.

Diversco performed myriad tasks while employed by Bibb. These involved loading Bibb vehicles, testing plant fire equipment, cleaning storage tanks, hauling waste to the landfill in Bibb trucks, moving manufacturing chemicals every week, hauling coal to a fire boiler, helping clean out drying beds, performing plumbing tasks, dumping lint (a manufacturing byproduct) daily, and helping with snow and ice removal. All of these tasks were done in conjunction with Bibb employees.

Also, many tasks were performed by Diversco solely and independently of any supervision by Bibb. These tasks involved dumping trash, spraying lawn chemicals, raking lint fabricators, using the push and riding lawn mowers, and cleaning lint filters. Routine janitorial maintenance was performed by the Diversco employees almost exclusively.

Christopher Graves was hired by Diversco and clearly was an employee of Diversco. Diversco employees filled out a Bibb application, were screened by Bibb personnel, given a physical by Bibb and given introductory training by Bibb. Bibb kept a personnel file on each of Diversco's employees. All other outside contractors were treated differently from Diversco employees.

Diversco employees were paid on a different scale from Bibb employees. Also, Bibb employees received insurance coverage, work

benefits (retirement), and vacation allowances. Diversco received none of these. Diversco was paid by The Bibb Company, and Diversco in turn paid its employees. Bibb had no right or authority to hire or fire Diversco employees but retained the authority to remove or ban Diversco employees from the premises.

## II. *The Applicable Law*

In Virginia, workers' compensation becomes the exclusive mode of compensation for injury to an employee if he is engaged in the "trade, business or occupation" of an employer. This applies to independent contractors when the work performed meets the "trade, business or occupation" test of § 65.2–302 and § 65.2–307. There is no bright line distinction that can be drawn or all-encompassing definition employed that would facilitate determination of when an independent contractor falls within the ambit of the statutes and becomes a statutory employee of an owner. Each case must be examined on an individual basis and must be assayed by the holdings of our Supreme Court.

A reading of all the applicable cases ultimately leads to an analysis and discussion of two cases, *Shell Oil Company v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), and *Henderson v. Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987). Other cases cited by plaintiff and defendant provide helpful analogies, but the aforesaid cases lead me to my ultimate decision.

The *Shell* decision supports the position espoused by plaintiff. The Supreme Court queried in *Shell* whether an activity (retailing of gasoline to the general public), an indispensable activity to the owner, was normally carried on by the owner through its employees or rather through independent contractors. After analyzing the relationship between the parties, the Supreme Court concluded that the "employee" was indeed an independent contractor.

The Court reasoned that while the sale of gasoline to consumers was the "ultimate, indispensable and final step in the petroleum business," the owner did not sell to the consumer but to dealers. *Shell, supra*, at 167. Even though there was much business contact and continuous interface between Shell and the service station (the lessor) the status of the lessor was that of independent contractor.

The Supreme Court looked to whether or not the retail sale of gasoline was "normally carried on by Shell through its employees

rather than through independent contractors." *Shell Oil Company, supra*, at 157. Finding that it was not normal business activity carried on by Shell through its employees, the Court found the lessee was an independent contractor and not a statutory employee of Shell, thus removing that employee from the aegis of workers' compensation.

In *Henderson, supra*, the Supreme Court of Virginia employed another test in determining whether a company was a statutory employer. The question in *Henderson* was whether a company was "capable" of doing the work which resulted in the accident. This case involved a public utility, and the Court hinted that the *Shell* test is not to be employed when the employer is a public utility. In doing so, it elaborated on the *Shell* test by saying, "It is not designed for every situation. It works best in cases involving private businesses because those entities often define their trade, business, or occupation by their conduct. With regard to such entities, *what they do on a day-to-day basis* provides a reasonably reliable indicator of their trade, business, or occupation." *Henderson, supra*, at 599 (emphasis mine). The Court further stated that to apply the *Shell* test to the *Henderson* facts would be "myopic."

### III. *Conclusion*

Whether or not I employ the *Shell* test or the *Henderson* test, I reach the same conclusion. Christopher Graves was the statutory employee of Bibb. It cannot be denied that Bibb is not in the business of janitorial or maintenance work and that type work was not normally carried on by its employees. However, the work done, i.e., the tasks performed by Diversco, was a necessary and natural byproduct of the main business of Bibb. Thus, Diversco was the employee of Bibb and not an independent contractor. The interrelationship of Bibb and Diversco, as heretofore described, was symbiotic and not that of employer and independent contractor; ergo, Mr. Graves was a statutory employee of Bibb.

Much of the work of Diversco was vital to the daily operation of Bibb, and as stated by plaintiff's witness, Calvin Palmer, the Bibb plant could not have run without the cleaning services of Diversco. What Bibb does on a *day-to-day* basis is produce textile, a *sine qua non* of which was the multifaceted services of Diversco. It would be foolish to assert that "cutting grass" is part of the trade, business, or

occupation of Bibb. However, it would be equally as fatuous to suggest that cleaning out storage tanks, disposing of industrial waste, clearing drying beds, and maintaining the digester ponds were not part and parcel of the trade and business of Bibb.

The Supreme Court in *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), suggested that in applying the *Shell* test, a Court should consider the frequency and regularity of which work is performed, all the while recognizing that "the question does not readily yield to categorical or absolute standards." *Bassett, supra* at 326. Diversco provided services essential to Bibb's trade, business, or occupation continuously from March of 1986 until the contract was terminated in August of 1989. Diversco worked interstitially with Bibb for three shifts a day for over three years. Plaintiff states that to rule for Bibb would so broadly construe the language of the statute as to render it meaningless. Were the facts as he urges, then I would agree.

However, I find that at the time of the accident, Diversco, to wit, Christopher Graves, was engaged in the trade, business, and occupation of Bibb, and the exclusive remedy is found within the workers' compensation statute § 65.2–302. To rule as plaintiff urges would be myopic. This opinion accords with the opinions rendered in *Ollie G. Stone v. United Parcel Service, Inc., et al.*, 27 Va. Cir. 496 (1989), *Richard J. Swain v. Burlington Industries, Inc.*, 27 Va. Cir. 536 (1990), *Ronald F. Ware v. Chesapeake Corp.*, 21 Va. Cir. 397 (1990), and with *Chenet A. Young v. ARA Services*, 25 Va. Cir. 413 (1991).

I [have entered an order] which incorporates by reference this opinion and upholds the defendant's plea in bar of workers' compensation and dismisses the lawsuit.