# Harold R. Carmody

### v.

# F. W. Woolworth Company, t/a Woolco

Record No. 841264

October 9, 1987

Present: All the Justices

*Philip A. Liebman* for appellant.

*Glen A. Huff (Owen J. Shean; Seawell, Dalton, Hughes & Timms*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Harold R. Carmody, an employee of Photo Corporation of America (PCA), suffered permanently disabling injuries in a slip and fall accident in the Woolco department store in Manassas. After receiving benefits under the Virginia Workers' Compensation Act (the Act) as PCA's employee, Carmody filed a motion for judgment against F. W. Woolworth Company, trading as

Woolco (Woolworth). Woolworth moved to dismiss on the ground that, under the Act, Carmody was its statutory employee and that the trial court, therefore, lacked subject-matter jurisdiction over the tort action. The trial court, Judge Henry L. Lam presiding, overruled the motion.

A jury returned a verdict awarding Carmody $65,000 in damages. By final order entered May 24, 1984, the trial court, Judge Bernard G. Barrow presiding, sustained Woolworth's motion to set the verdict aside. Judge Barrow ruled that Carmody was Woolworth's statutory employee, that Carmody's exclusive remedy was a claim under the Act, and that the court lacked jurisdiction over the tort action.

At trial, Woolworth offered as evidence a photocopy of a license agreement in which Woolworth granted to PCA a license to operate a portrait photography department in Woolworth's stores, and a photocopy of that portion of an employee manual describing procedures to be followed by Woolworth employees in regard to PCA operations in Woolworth's stores. Out of the presence of the jury, the trial court admitted these documents into the record for the limited purpose of deciding whether Carmody was a statutory employee of Woolworth.

Initially, Carmody contends that the trial court erred in admitting the license agreement. Carmody complains that the document was a copy of a photocopy of the original agreement Woolworth kept in its regional office in Philadelphia, and, as secondary evidence, was inadmissible absent proof that the original was unavailable. While this Court has long required proof of a case through the most reliable evidence available, see Lee v. Tapscott, 2 Va. (2 Wash.) 276 (1796); Apperson v. Dowdy, 82 Va. 776, 1 S.E. 105 (1887), Carmody has not challenged the content of the license agreement as represented in the photocopy. Indeed, in response to a question from the bench on appeal, Carmody's counsel acknowledged that the authenticity of the license agreement as represented by the photocopy was never questioned at trial. We cannot say that the trial court erred in ruling that the photocopy was reliable evidence, competent for the court's in camera consideration of Woolworth's statutory employee defense.

Carmody did question at trial the authenticity of the signatures on the license agreement. He objected to the fact that the Woolworth manager who identified the agreement could not authenticate the signatures from personal knowledge. Code § 8.01-

279(A), however, provides that when as here, "any pleading alleges that any person made, endorsed, assigned, or accepted any writing, no proof of the handwriting shall be required, unless it be denied by an affidavit accompanying the plea putting it in issue." Carmody did not comply with the statutory mandate. Moreover, in conjunction with its motion to dismiss, Woolworth submitted the affidavit of the Woolworth manager identifying the document and verifying the signatures. We conclude that the trial court properly admitted a photocopy of the license agreement.

■ Carmody next argues that the trial court admitted the excerpt of the employee manual into the record without requiring a proper foundation. Carmody contends that Woolworth failed to produce "evidence that the terms of the manual were followed by Woolco employees, that it was part of any agreement with Mr. Carmody's employer, or that the manual was effective as to PCA employees." The trial court, however, admitted the manual as tending to prove only that the manual accurately reflected instructions from Woolworth to its employees regarding PCA operations. For this limited purpose, evidence of the kind demanded by Carmody was unnecessary and irrelevant. Finding that Woolworth laid a proper foundation for this purpose, we hold that admission of the manual was not error.

■ Based on the license agreement, the manual, and other evidence offered at trial, the trial court ruled that Carmody was Woolworth's statutory employee. The determinative issue is whether, at the time of his injury, Carmody was engaged in work that was part of Woolworth's trade, business, or occupation. Whether an independent contractor's activities constitute a part of an owner's trade, business, or occupation is a mixed question of law and fact that must be resolved in light of the facts and circumstances of each case. *Bassett Furniture* v. *McReynolds*, 216 Va. 897, 899, 224 S.E.2d 323, 324 (1976). On the statutory employee issue, the trial court sat as the fact finder and, insofar as the evidence is in conflict, we view the facts and all reasonable inferences raised by the evidence in the light most favorable to Woolworth and consider whether the trial court correctly applied the law thereto.

Woolworth is in the business of retail merchandising, and in December 1981 its operations included discount department stores located throughout Virginia. One such store was the Woolco de-

partment store in Manassas that sold, among other items, photographic supplies and film processing services.

In 1971, Woolworth entered into a license agreement with PCA for the taking and sale of portrait photographs at Woolworth's stores. Pursuant to this agreement, in exchange for 10% of the sales made by PCA in Woolworth's stores, PCA employees were permitted to operate a portrait photography department in Woolworth's stores on dates mutually agreed upon by the parties. When such a date was set, Woolworth would designate the location of the department in the store, prepare an area to provide a minimum of 150 square feet, and furnish any fixtures, equipment, or signs needed to promote the venture. Woolworth provided the licensee with a cash register; furnished janitorial service, building security, and all utilities; and expressly reserved to itself authority over sales, refunds, exchanges, and extensions of credit. The license agreement required PCA to install, maintain, and remove all equipment needed, and to furnish all materials consumed, in the operation of the portrait photography department, and to save Woolworth harmless from any liability arising out of the operation of the department.

The license agreement provided that all advertising and promotion was to be conducted under the exclusive supervision, management, and control of Woolworth, and PCA was not permitted to display its name anywhere in the stores except on its brand name merchandise. The agreement further provided that PCA was to acquire Woolworth badges or uniforms for its employees, and PCA employees were to accept checks from customers only if drawn or endorsed to the order of "F. W. Woolworth Co." or "Woolco Department Stores".

The license agreement required PCA to compel its employees to comply with the rules and regulations of Woolworth stores, which included detailed restrictions on telephone usage, parking, and store access. In addition, PCA was required to dismiss from the portrait photography department any employee who, in the sole judgment of Woolworth, failed to conduct himself or herself properly.

Carmody was employed by PCA as a traveling photographer. His duties basically were those of a photographer, a mover, and a salesman. Part of his duties involved traveling to various stores to unload and set up a temporary photography studio and to take portrait photographs. He was required to travel back to the store

with proofs at a later date to take orders for finished portraits from customers. During busy holiday seasons, it was sometimes necessary to return to the store just to deliver finished portraits.

On December 18, 1981, the day he was injured, Carmody was in the Manassas Woolco solely for the purpose of delivering finished portraits and collecting the customers' payments. In his words, Carmody was working that day as a "temporary salesman". Carmody arrived shortly before the store was to be opened for business. He was straightening tablecloths in the portrait photography department when he slipped on a dolly, fell to the floor, and sustained back injuries which proved to be permanent and disabling. Employees of Woolco had used the dolly that morning to reposition display tables in order to provide adequate space for the heavy flow of Woolworth customers expected to buy portraits that day.

As we have said, the question whether Carmody was Woolworth's statutory employee at the time of his injury turns on whether Carmody was engaged in work that was a part of Woolworth's trade, business, or occupation. Code § 65.1-29 provides that when an owner "undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with" a subcontractor "for the execution or performance by or under such subcontractor of the whole or any part of the work", the owner becomes a statutory employer and the subcontractor's employees become statutory employees of the owner. The purpose of this section is to afford protection to the employees of independent contractors who may not be financially responsible and to prevent employers from relieving themselves of liability for workers' compensation by doing through independent contractors what they otherwise would do through direct employees. *Bassett Furniture*, 216 Va. at 902, 224 S.E.2d at 326 (citing *Sears, Roebuck & Co.* v. *Wallace*, 172 F.2d 802, 810 (4th Cir. 1949)).

Carmody is not seeking workers' compensation coverage from Woolworth.* Nevertheless, "our consideration of this appeal is . . . governed by the principles that apply in a case where coverage is sought." *Henderson* v. *Central Telephone Co.*, 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987). Consistent with the principles we would apply in considering a claim under the Act, we

---

* Indeed, Carmody already has recovered workers' compensation from his immediate employer, PCA, and any recovery by Carmody in this tort action would inure by subrogation to PCA or its insurance carrier to the extent of the benefits he received.

must construe the Act's provisions liberally to promote its remedial purpose of affording compensation for accidental injuries resulting from hazards in the work environment. *Id.; see also Fauver* v. *Bell*, 192 Va. 518, 522, 65 S.E.2d 575, 577 (1951); *Feitig* v. *Chalkley*, 185 Va. 96, 98, 38 S.E.2d 73, 75 (1946).

With these policy considerations in mind, we must determine whether the work in which Carmody was engaged on the day of his accident was a part of Woolworth's trade, business, or occupation. Although such a question is not subject to categorical or absolute standards, this Court has approved repeatedly the test quoted and applied by this Court in *Shell Oil Co.* v. *Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972). *See Cooke* v. *Skyline Swannanoa*, 226 Va. 154, 158, 307 S.E.2d 246, 248-49 (1983); *Southeastern Tidewater Auth.* v. *Coley*, 221 Va. 859, 863, 275 S.E.2d 589, 591 (1981); *Bassett Furniture*, 216 Va. at 902, 224 S.E.2d at 326; *Sun Oil Company* v. *Lawrence*, 213 Va. 596, 598, 194 S.E.2d 687, 688 (1973). *But cf. Henderson*, 233 Va. at 383, 355 S.E.2d at 599 (*Shell Oil* test is inapplicable to public utilities and governmental entities).

In *Shell Oil* this Court said:

> Professor Arthur Larson, in his work, *The Law of Workmen's Compensation*, Vol. 1A, states:
>
> > "[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors." (Emphasis supplied.) Larson at § 49.12, pp. 872, 873.

212 Va. at 722, 187 S.E.2d at 167.

■ As Carmody interprets this test, he was not Woolworth's statutory employee. The principal basis for Carmody's argument is that PCA's portrait photography department was not a part of Woolworth's trade, business, or occupation because Woolworth had never been engaged in the portrait photography business and none of its employees were trained to operate such a department.

Carmody's argument, however, misses the mark. The appropriate inquiry is not whether Woolworth as owner was engaged in the portrait photography business or had ever been, but whether Carmody's sale of portrait photographs was a part of Woolworth's business of operating a department store. Indeed, it may be inferred that Woolworth had no desire to engage directly in the business of taking and selling portrait photographs in any of its stores. But, as a discount department store selling a variety of goods and services, Woolworth saw a consumer demand for portrait photographs and, as a matter of commercial self-interest, elected to make it a part of its retail merchandising business, albeit a part conducted through an independent contractor.

We note that courts in other jurisdictions have held that employees of an independent contractor engaged in work as a licensee of a department store are statutory employees of the store. *See, e.g., Schmolke* v. *Krauss Co.*, 217 So. 2d 789, 792 (La. Ct. App. 1969) (shoe department); *Tindall* v. *Denholm and McKay Company*, 347 Mass. 100, 104, 196 N.E.2d 631, 633-34 (1964) (millinery department); *Bianculli* v. *Times Square Stores*, 34 A.D.2d 696, 697, 309 N.Y.S.2d 542, 544 (1970) (beauty salon). Of particular interest is the decision and the facts underlying the decision in *Corollo* v. *S. S. Kresge Company*, 456 F.2d 306 (4th Cir.), *cert. denied*, 407 U.S. 911 (1972).

Although Carmody refers to that case on brief, he makes no effort to distinguish it. In *Corollo*, the plaintiff, an employee of a licensee millinery department, slipped and fell on a wet floor in the K-Mart store in which she was working. A license agreement between the owner and the licensee, quite similar to Woolworth's agreement with PCA, provided that K-Mart had the right to change the location of the department within its store; that K-Mart was to supply all fixtures and a cash register; that K-Mart was to furnish utilities, janitorial service, and security for the building; that the licensee was permitted to conduct sales only under the name of K-Mart; that the licensee and its employees were to operate subject to K-Mart's rules and regulations; that K-Mart had exclusive control over advertising; that K-Mart retained control over credit charges; and that the licensee was to hold K-Mart harmless from certain liabilities arising out of the operation of the department. 456 F.2d at 308-09 n.3.

Applying South Carolina law to these facts, but citing Virginia decisions construing statutory employer provisions identical to

South Carolina's, the court held that the plaintiff was engaged in work that was a part of K-Mart's business. *Id.* at 312-13. The *Corollo* court found that, despite the fact that K-Mart had never before operated a millinery department, the sale of hats was a natural extension of K-Mart's business of selling a wide variety of goods. *Id.* at 312.

Here, as in *Corollo*, the licensee, PCA, was in the business of retail sales and its business represented merely an extension of the owner's retail sales business to include an additional type of goods. PCA was not engaged in work that represented an activity outside the scope of the activities Woolworth normally carried on through its employees. *Compare Snowden* v. *Virginia Elec. & Power Co.*, 432 F.Supp. 266, 270 (E.D. Va. 1976) (increasing power line capacity was part of power company's business) *and Stewart* v. *Bass Constr. Co.*, 223 Va. 363, 366-67, 288 S.E.2d 489, 491 (1982) (routine maintenance of paper product manufacturer's facilities was part of owner's business) *with Farish* v. *Courion Industries, Inc.*, 722 F.2d 74 (4th Cir. 1983) (major repairs to elevators was not part of University of Virginia's business), *aff'd on rehearing*, 754 F.2d 1111 (1985) *and Bassett Furniture*, 216 Va. at 903, 224 S.E.2d at 327 (construction work on furniture manufacturer's plant was not part of owner's business).

We are of opinion that the evidence considered by the trial court was sufficient to support a factual finding that the retail sales aspect of Carmody's work was "a part of [Woolworth's] trade, business or occupation", Code § 65.1-29. We hold, therefore, that Carmody was Woolworth's statutory employee at the time he sustained his injury; that the rights and remedies granted by the Act to an employee covered by the Act "exclude all other rights and remedies", Code § 65.1-40; that the trial court correctly sustained Woolworth's motion for judgment notwithstanding the verdict; and that said judgment will be affirmed.

*Affirmed.*