## CIRCUIT COURT OF THE CITY OF RICHMOND

Chenet A. Young

    v.

ARA Services et al.

November 1, 1991

Case No. LS-4120-3

By JUDGE T. J. MARKOW

This matter is before the court on the special pleas of the Workers' Compensation Act as a bar to the plaintiff's claim by ARA Services, Inc. (ARA), John Grady, and Morton G. Thalhimer Services Corporation (Thalhimer).

The plaintiff claims that she slipped and fell in a cafeteria operated in the Sovran Center while on her lunch break. She is an employee of Sovran Bank, N.A. (the Bank) and works in the building where the cafeteria is located. The Bank owns the building, renting some of the space to other businesses but occupying the bulk of it for its own uses.

Food services in the cafeteria are provided by ARA pursuant to an agreement between it and the Bank. The Bank controls the menu choices and approves pricing. The contract is a cost plus arrangement with the Bank agreeing to provide a "subsidy" if ARA's "entitlement" is not met by receipts from the cafeteria sales. While ARA's objective is to avoid a deficit, the Bank has regularly subsidized the cafeteria.

The Bank provides the equipment, china, utensils, and utilities, as well as providing building maintenance services for the area, such as cleaning window blinds, grease traps, and ductwork. ARA's cleaning responsibilities include routine cleaning of the food preparation and service

areas, but the Bank is responsible for the floors, including periodic waxing and buffing.

In order to provide the cleaning services agreed to in the ARA contract and for the rest of the building as well, the Bank contracted with Thalhimer to do the work. The Bank has determined that it is cheaper to hire a contractor than to hire its own employees, since it saves such expenses as providing employee benefits, training, and supervision.

The plaintiff alleges that ARA Services, John Grady as agent and employee of ARA Services, and Thalhimer negligently permitted a slippery and dangerous condition to exist when they knew that such a condition was dangerous to patrons of the cafeteria. She claims that as a result of the dangerous condition, she slipped and was injured.

The issue presented in this case is whether ARA and Thalhimer are "other parties" as contemplated by Va. Code Ann. § 65.2-309, which allows for common law actions by employees for work-related injuries caused by "other parties." An "other party" has been defined as a "stranger to the business" of the employer. *Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946). So, whether ARA, its employee, John Grady, and Thalhimer are strangers to the business of the Bank must be determined. This is an inquiry to be made based on the facts and circumstances of each case. *Basset Furniture Industries v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976).

The court finds that the two organizations are not strangers to the business of the Bank. There are numerous Virginia cases which have discussed maintenance as an integral part of what businesses must do to provide a decent and safe environment for workers and customers and to prevent breakdown and deterioration of equipment and buildings. That the work has been subcontracted does not change its character as part of the trade, business, or occupation of the owner. This court discussed at some length the relationship of a cleaning contractor of Thalhimer's department store with a Thalhimer's employee who slipped and fell on a wet floor in *Roberts v. Huggins*, Case No. LS-731-3 (Cir. Ct. City of Richmond, Dec. 27,

1990), finding that cleaning even more than maintenance is integral to a retail business, as it is done on a daily basis as contrasted with the sporadic nature of repair.

The plaintiff's argument that because the stripping and waxing of floors is a "project" separately identified in the cleaning contract between the Bank and Thalhimer, it should be treated differently is not persuasive. That it is done semi-annually rather than weekly does not change the nature of the act -- that of cleaning and polishing -- to provide a sanitary, attractive, and inviting environment for the Bank.

The Bank's operation of a cafeteria in its building meets several business purposes as well. As it is open to the public as well as to Sovran employees, it is reasonable to assume that the cafeteria makes the rental space in the Sovran Center more attractive to lessees, both for the convenience of the lessees and to attract potential customers to the building. It provides an employee benefit to the Bank's work force by giving workers a convenient place to go and by providing them with discounted prices. Additionally, the cafeteria serves the Bank's purposes by allowing it to provide only half-hour lunch breaks. Since the eleven to two o'clock time slot, which is the customary lunchtime in our society, seems likely to be also the part of a bank's day with the highest volume of customer traffic, one can conclude that the shorter time employees need to be away for that period, the better for the Bank.

The plaintiff argues that were the cafeteria not there, the immediate neighborhood offers options for employee lunches, and thus the cafeteria is not necessary to the Bank. However, the testimony was that the cafeteria serves between a thousand and twelve hundred people a day. If that many additional people were to flood into the streets in the immediate neighborhood to get lunch in a half hour, it is highly likely that the additional strain on the lunch facilities in the area would make it very difficult for employees to meet their time constraints. Certainly, restaurants "on the street" are not convenient to employees. Additionally, it is for the

employer to determine whether an internal eating facility is in its best interests, irrespective of the availability of other establishments. Whether such an operation is a "good" business decision is not a part of the analysis in determining whether an entity is an "other party."

Businesses engage in many activities which do not comprise the fundamental transactions of the undertaking but which are considered by the owners as no less essential to maintaining a healthy business. These include activities such as hosting company social functions to promote employee harmony, placing art in the work place to improve the aesthetic quality of the environment for employees and customers, publishing company newsletters, and more mundane things, such as sweeping floors. The amount of energy and money spent on such things are business judgment calls shaped by the commercial self-interest of the owners. They are all examples of essential parts of the trade, business, or occupation of the employer.

The appropriate inquiry is not whether the Bank as owner was engaged in the cafeteria business but whether the operation of the cafeteria is a part of the Bank's business of operating a bank. *See, Carmody v. F. W. Woolworth Co.*, 234 Va. 198, 205, 361 S.E.2d 128, 132 (1987). In the *Carmody* case, the court found that Woolworth's acting with "commercial self-interest" in conducting a portrait photograph business through an independent contractor satisfied the test even though "it may be inferred that Woolworth had no desire to engaged directly in the business of taking and selling portrait photographs." The Bank has demonstrated its commercial self-interest in having a cafeteria operated in its building.

For the foregoing reasons and keeping in mind the principle that the Act's provisions must be liberally construed to promote its remedial purposes, *id*. at 204, 361 S.E.2d at 131, the court finds that ARA, Thalhimer, and John Grady, as a statutory fellow employee, are engaged in the trade, business, or occupation of the Bank and thus are not "other parties," and a common law action against them is barred by the Workers' Compensation Act.