**Daniel THOMAS, et ano., Plaintiffs,**

v.

**STONE CONTAINER CORPORATION, Defendant.**

No. 95 Civ. 5726 (LAK).

United States District Court, S.D. New York.

April 25, 1996.

---

11. *See* Fed.R.Evid. 12(b); Wright & Miller § 1366.

Lawrence B. Saftler, New York City, for Plaintiffs.

Katherine L. Adams, D. Evan van Hook, Sidley & Austin, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Daniel Thomas seeks recovery for personal injuries allegedly sustained in an accident while he was employed as a temporary laborer for an independent contractor that was performing certain maintenance work at a Virginia paper mill owned by defendant Stone Container Corporation ("Stone"). Stone previously moved for summary judgment dismissing the complaint on the ground that Thomas was its statutory employee under the Virginia Workers' Compensation Act ("VWCA") and that Stone therefore could not be sued. The Court denied the motion on the ground that the statutory employment determination was within the primary jurisdiction of the Virginia Workers' Compensation Commission (the "Commission"), which was about to decide the issue in a proceeding commenced by Thomas. *Thomas v. Stone Container Corp.,* No. 95 Civ. 5726 (LAK), 1996 WL 79325 (S.D.N.Y. Feb. 23, 1996). Days later, however, plaintiff settled the proceeding before the Commission in a manner that resulted in the dismissal of his workers' compensation claim against Stone, thus precluding a determination of the question in the administrative context. Stone therefore renews its motion for summary judgment dismissing the complaint.

### The Facts

The accident that is the focus of this case occurred at Stone's Hopewell mill. Thomas was employed at the time by Labor Pro Temporary Services, which had supplied Thomas and other workers to Industrial NDT ("INDT"), which in turn had been engaged by Stone to conduct metallurgical surveying in preparation for certain non-destructive metallurgical testing. In view of the fact that the case turns, at this stage, on whether Stone is to be regarded as Thomas' statutory employer, a review of the evidence concerning the nature and extent of Stone's relevant operations is essential.

*Stone's Factual Contentions*

Stone has put forward a detailed account of its staffing and operations at the Hopewell

mill, all of which is undisputed save in certain particulars discussed below.

Stone has maintenance and engineering ("M & E") departments at the Hopewell mill which employ 158 people—36 percent of the mill's entire workforce. These departments include managers, skilled workers, and unskilled laborers, some of whom are trained in specific maintenance tasks required at the mill including metallurgical testing, welding, pipe fitting, and millwright work. They are responsible for ensuring the good working order of all aspects of the mill's equipment, and Stone has personnel on staff responsible for metallurgical testing among other functions. The majority of all maintenance work at the mill is undertaken directly by Stone employees, who spend about 230,000 hours per year on maintenance and repair work.

Stone maintains that it conducts non-destructive metallurgical testing about twelve times a year at the mill and that twelve of its employees are trained to conduct this work, which usually is done with the assistance of unskilled laborers. It contends also that it owns all of the equipment necessary to perform this work.

Stone conducts a maintenance outage at the mill each year during which extensive testing and repair operations are carried out. Because the mill is idled during the annual outage, thus stopping all production, there is a premium on doing the necessary work quickly, and Stone's entire M & E staff works around the clock. Nevertheless, while most of the work is performed by Stone employees, Stone also hires subcontractors to assist, specifying in advance the work to be done and then directing the subcontractors' activities and monitoring their work on a daily basis.

In March 1994, the mill had a regularly scheduled outage during which Stone determined that non-destructive metallurgical testing would be conducted on the recovery boiler, which generates power and steam for the mill. It hired INDT to perform this work, and INDT in turn contracted to supply technicians at a rate of $38 per hour and laborers to assist the technicians at a rate of $26 per hour. Thomas was among the laborers supplied by INDT.

INDT was not on its own during the outage. Two employees from Stone's Engineering and Technology Group came to Hopewell to assist in the work INDT was to conduct. They tested and/or approved each of the skilled INDT employees who was to conduct the actual testing. They did not, however, test the unskilled laborers. According to Stone, these two Stone employees monitored INDT's work.

Thomas was injured on March 19, 1994, during the outage, while performing unskilled labor relating to the testing of the recovery boiler.

*Thomas' Affidavit*

Thomas has submitted a brief affidavit in opposition to the motion.[1] The pertinent assertions are that (1) Thomas' "understanding is that STONE CONTAINER did not have [the] special equipment" used by INDT during the outage (Thomas Aff. ¶ 9; *see also id.* ¶ 15); (2) Thomas never was directed, managed, controlled or supervised by Stone employees while he was at the mill (*id.* ¶ 11); (3) Thomas "was told that 'they (Stone Container) did not do this kind of work themselves' by employers [*sic*] of INDT and Stone Container" (*id.*); and (4) "[w]hile Stone Container may maintain a staff of employees in their maintenance and engineering department, Stone Container's ordinary course of business is not in maintenance, and certainly not metallurgical surveying," something Thomas allegedly was told by Stone employees (*id.* ¶ 15; *see also id.* ¶ 16). Thus, Thomas seeks to place in issue whether Stone personnel typically did the sort of work that it hired INDT to perform and whether it had the specialized equipment necessary to do so. The affidavit, however, does not set forth facts showing that Thomas is competent to testify to most of the assertions it contains.

*Discussion*

 Section 65.2–307 of the VWCA, Va. Stat. § 65.2–307, provides that the rights

---

1. Thomas' affidavit was submitted in opposition to the prior motion and resubmitted on this one.

The same is true of many of the papers relied upon by Stone.

granted to the employee under the Act "shall exclude all other rights and remedies of such employee ... at common law or otherwise" on account of a work-related injury. Accordingly, the Act divests both state and federal courts of subject matter jurisdiction over tort claims brought by employees against their employers. *See Pendley v. United States,* 856 F.2d 699, 702 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 155 (1989); *Carmody v. F.W. Woolworth Co.,* 234 Va. 198, 361 S.E.2d 128 (1987).

> Section 65.2–302 provides in relevant part: "When any person (referred to in this section as 'owner') undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him." Va.Stat. § 65.2–302.

Accordingly, a worker deemed to be a statutory employee is limited to his or her workers' compensation remedy against the statutory employer. Stone claims that it is entitled to summary judgment on the alternative grounds that Thomas was Stone's statutory employee and, in any case, that Thomas is estopped to contend otherwise by virtue of a position taken by him before the Commission.

*Estoppel*

█ During the course of the Virginia administrative proceeding, Labor Pro successfully requested that INDT and Stone be made parties defendant. Thomas' Virginia counsel then wrote that it was Thomas' "position ... [that] he is entitled to the same benefits from Stone Container that he is entitled to from the other defendants." She went on to say that "[w]hether Stone Con-

tainer was a statutory employer is a question of law for the Deputy Commissioner to decide." (Def. Mem. in Support of Motion to Renew Ex. E) Stone argues that Thomas, having taken the position that Stone was obliged to pay him benefits under the VWCA, is estopped to deny that Stone was his statutory employer.

█ The doctrine of judicial estoppel holds that a party that has taken one position in a proceeding in order to obtain some benefit may not thereafter take an inconsistent position in another proceeding. *E.g., Roth v. McAllister Bros., Inc.,* 316 F.2d 143, 145 (2d Cir.1963). Nevertheless, at least as applied in this Circuit, the doctrine requires not only that the party have taken an inconsistent position, but that the party have succeeded in gaining some advantage by having done so. *E.g., id.; Long Island Lighting Co. v. Transamerica Delaval, Inc.,* 646 F.Supp. 1442, 1447 n. 4 (S.D.N.Y.1986); *Oneida Indian Nation of Wisconsin v. State of New York,* 102 F.R.D. 450, 453–54 (N.D.N.Y.1984).

Here, Thomas took inconsistent positions in both seeking workers' compensation benefits from Stone before the Commission, an effort that necessarily rested on the theory that Stone was his statutory employer, and in denying before this Court that Stone occupied such a position.[2] But Thomas gained no benefit by doing so because he settled the Virginia matter with Labor Pro and dismissed as to Stone before the Commission ruled on the statutory employer point. In consequence, there is no inequity in permitting Thomas to proceed here. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1283, at 542 (1990).

*The Statutory Employer Issue*

█ The question whether Thomas was a statutory employee of Stone turns on whether the work in which he assisted INDT "was a part of the trade, business or occupation of" Stone at the time of the accident. *Shell Oil Co. v. Leftwich,* 212 Va. 715, 720,

---

**2.** Thomas' counsel in this case argues that the position taken by Thomas' Virginia workers' compensation attorney does not bind Thomas' New York attorney. (Saftler Aff. ¶ 9) This entire-

ly frivolous argument overlooks the fact that the attorneys' actions were taken by them as agents for, and are binding upon, Thomas.

187 S.E.2d 162, 166 (1972). The Virginia Supreme Court has said that:

> "[T]he test is not whether the owner, by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether such contractor is performing work that is part of the trade, business or occupation of the owner." *Id.*

Moreover, the test used to determine the issue of statutory employment is the same both in "right side up" cases—those in which the injured worker seeks workers' compensation coverage—and in "upside down" cases, where the worker seeks to avoid coverage in order to maintain a tort action against another. *Carmody*, 234 Va. at 203–04, 361 S.E.2d at 131; *Henderson v. Central Telephone Co. of Virginia*, 233 Va. 377, 382, 355 S.E.2d 596, 598 (1987). It is to be applied liberally in favor of coverage. *Id.*

While Thomas seeks to raise factual issues as to whether Stone periodically performed the particular task in which INDT was engaged at the time of Thomas' accident and, indeed, whether it had the specialized equipment to do so, it is undisputed that the performance of this particular work was a regular part of the routine maintenance of the Hopewell mill. Indeed, Thomas' affidavit states that INDT did this work for Stone annually.[3] (Thomas Aff. ¶ 9) In consequence, the starting point for analysis of the statutory employer issue is whether one engaged by a subcontractor to do routine maintenance on a facility owned by one whose primary business is manufacturing the goods produced by the facility is a statutory employee of the facility's owner. There are several Virginia cases particularly pertinent here.

In *Walker v. United States Gypsum Co.,* 270 F.2d 857 (4th Cir.1959), *cert. denied,* 363 U.S. 805 (1960), the injured worker was employed by a plumbing contractor that had been hired by a plant owner to remove and relocate pipe lines to accommodate new plant construction, much of which was being carried out by the owner's own construction division. The Fourth Circuit affirmed a grant of summary judgment to the employer, rejecting the worker's contention that the owner could not be deemed a statutory employer because it did construction work only for itself and that its trade or business really was manufacturing. In so doing, it indicated that the Virginia legislature intended to "impose the obligations of the act upon an owner in every case in which the work being done is a kind of work which employees of the owner usually or appropriately do, though, in the particular instance, some or all of the work was being accomplished through independent contractors." *Id.* at 863.

In *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), the worker was an employee of a conveyor belt constructor which had been hired to install a new conveyor belt in a factory. He was injured when he fell through a hole in a factory floor cut by the owner's employees to accommodate the new conveyor belt. The statutory employer issue was submitted to the jury, which ruled for the worker. The Virginia Supreme Court affirmed, holding that the evidence was sufficient for the jury to find that the work in question was not part of the trade or business of the owner. It noted that "[f]requency and regularity of performance [of similar work by the owner] are factors to be considered" under the *Shell Oil* test, and added:

> "In the manufacturing industry, construction work is typically outside the custom of the trade, and manufacturers who use their employees for such work generally do so only infrequently and irregularly. The courts have largely agreed that such manufacturers are not statutory employers of employees of independent contractors hired for such work. [citations omitted] On the other hand, where a manufacturer regularly does its own construction work with its own employees, a different result may be reached." 216 Va. at 903, 224 S.E.2d at 327.

*Johnson v. Jefferson National Bank,* 244 Va. 482, 487, 422 S.E.2d 778, 780 (1992), is to the

---

**3.** As in most instances, the affidavit does not indicate the source of Thomas' professed knowl- edge.

same effect, holding that employees of a painting contractor engaged to paint a bank building at great height and under unusual working conditions were not statutory employees of the bank because the bank's own maintenance employees did not do painting work under comparable conditions. *See also Farish v. Courion Industries, Inc.,* 722 F.2d 74, 79–80 (4th Cir.1983); *Cinnamon v. International Business Machines Corp.,* 238 Va. 471, 479, 384 S.E.2d 618, 622 (1989); *Oakwood Hebrew Cemetery Association v. Spurlock,* No. 1978–91–2, slip op. at 7–10, 1992 WL 441851 (Va.App. Aug. 18, 1992).

In *Stewart v. Bass Construction Co.,* 223 Va. 363, 288 S.E.2d 489 (1982), the injured worker was a paper mill employee who was supervising the operations of an independent contractor brought in to provide a crane to lift a large piece of the owner's equipment. He sought to sue the crane contractor, which defended on the ground that plaintiff's sole remedy was under the VWCA because the crane contractor was engaged in the owner's trade or business. The Virginia Supreme Court affirmed dismissal of the action, holding that the crane contractor and the injured worker both were engaged in the owner's normal maintenance operations and thus in the business of the owner. 223 Va. at 367, 288 S.E.2d at 491. It distinguished *Bassett* on the ground that the owner's employees in that case did not supervise the work of the conveyor belt contractor or work with the contractor's personnel. *Id.*

Finally, in *Counts v. Stone Container Corp.,* Case No. 87–L–574 (Cir.Ct. Henrico Co. Aug. 5, 1988), *aff'd,* 239 Va. 152, 387 S.E.2d 481 (1990), the injured worker was a subcontractor injured while inspecting and attempting to repair a cyclone cylinder on the roof of a Stone plant. He contended that he was not Stone's statutory employee because Stone employees allegedly did not ordinarily repair the cyclone cylinder and, in consequence, that the maintenance activity in which the plaintiff was engaged was not part of Stone's trade, business or occupation. The trial court, however, rejected the argument, holding that:

> "[T]he cyclone cylinder was but one part of an interrelated whole which makes up the

waste system. Stone Container's employees had the skill and the tools necessary to work on this equipment and had on numerous occasions made repairs to the waste system. Even if it be conceded that Stone Container did not normally repair the cyclone cylinder, it nevertheless was part of Stone's trade, business, or occupation." *Id.* at 309–10.

*Shell, Walker, Bassett, Johnson* and to some extent *Counts* all indicate that one employed by a subcontractor to perform maintenance tasks for an owner whose own employees frequently and regularly perform the same tasks is a statutory employee of the owner. *Stewart* indicates that one employed by a subcontractor to perform maintenance tasks for an owner whose own employees are neither equipped to, nor regularly do, perform the same tasks nevertheless is a statutory employee of the owner if the owner's employees actively supervise the work. *Counts* at least implies a still broader view.

Thomas here contends that Stone's employees did not regularly perform the sort of metallurgical testing in which he was assisting when injured, that they did not supervise his efforts, and that Stone lacked the equipment necessary to do this work. If Thomas has submitted evidence sufficient to raise a genuine issue of fact on these points, summary judgment must be denied. In consequence, the Court turns to consideration of the sufficiency of the affidavit.

Rule 56(e), FED.R.CIV.P., provides that affidavits in support of and in opposition to motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The first of Thomas' contentions is that Stone lacked the special equipment used by INDT to perform the work in which Thomas assisted. At one point this is stated to be Thomas' "understanding." (Thomas Aff. ¶ 9) At another, the proposition is put forward simply as a bald assertion, although one possibly might infer that Thomas meant

to indicate that this is something he was told by unidentified Stone employees. (*Id.* ¶ 15)

▮▮▮ To the extent this assertion is advanced simply as Thomas' understanding, it is not relevant. The issue is whether Stone in fact had this equipment, not Thomas' state of mind as to whether it had the equipment. *See, e.g., United States v. Private Sanitation Industry Association,* 44 F.3d 1082, 1084 (2d Cir.1995) (affidavit stating fact "to the best of the [affiant's] knowledge" insufficient to create an issue of fact). Nor would it be admissible even assuming, *arguendo,* that Thomas' affidavit were construed to say that an unidentified Stone employee told him that Stone lacked the equipment. Such a statement would be classic hearsay and therefore not appropriately considered on this motion. *See, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). It would not be removed from that category by FED. R.EVID. 801(d)(2)(B) or (C). As the speaker is unidentified, even by job function, there is no evidence that the alleged statement was made by a person authorized to make it or that it concerned a matter within the scope of the declarant's employment.[4] Even if the hearsay objection were overcome, there would be no evidence from which the Court would be justified in concluding that the alleged declarant had personal knowledge of the facts attributed to him or her by Thomas. As Judge Weinstein has pointed out, the proponent of an admission by a party opponent must establish the declarant's competence; office or plant gossip does not become admissible simply because it is put into the mouth of someone whose statements are not subject to hearsay objection. *Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 700 F.2d 785, 816–17 (2d Cir. 1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). This analysis disposes as well of the second of Thomas' factual contentions, his assertion that unidentified Stone personnel told him that Stone did not ordinarily perform the sort of work in which Thomas was engaged. Accordingly, Thomas' affidavit is insufficient to raise a genuine issue of fact as to whether (1) Stone possessed the specialized equipment used in performing the task in which Thomas was assisting when he was injured, or (2) Stone personnel regularly performed that work.

This brings the Court to the last of Thomas' factual contentions, viz. that Stone personnel did not supervise his work. This of course is a matter of which Thomas has personal knowledge and it is properly considered on this motion. The question is whether it raises an issue of fact and, if so, whether that issue is material to disposition of the motion.

Thomas' assertion raises no issue of fact. Stone's affidavits establish that Stone supervised INDT's work by meeting at least twice a day with INDT supervisors, assigning tasks to them, answering INDT's questions, and monitoring the work. (Hughes Aff. ¶ 19) Stone does not suggest that it directly supervised or controlled the efforts of the temporary laborers, like Thomas, whom INDT brought in to assist its technicians. By the same token, Thomas does not dispute the accuracy of Stone's account of the manner in which it supervised and controlled INDT. Accordingly, the Court takes it as established for purposes of the motion that Thomas' individual efforts were not directly supervised and controlled by Stone, but that Stone did supervise and control INDT in the manner described.

▮▮▮ In view of the foregoing analysis, the evidence on this motion establishes that the work in which INDT and Thomas were engaged at the time of the accident was work which Stone employees were fully equipped to perform and regularly performed. It establishes also that Thomas' individual efforts were not supervised by Stone, but that Stone did actively supervise INDT. Given the principles set forth in the Virginia cases, Stone is entitled to summary judgment dismissing the complaint unless summary judgment is precluded in view of

---

4. The fact that Thomas himself was merely an employee of a temporary service who worked at the Hopewell mill for only one day prior to the accident (Thomas Aff. ¶¶ 5, 10) lends added support to the Court's view. There is no reason to suppose in such circumstances, and Thomas' affidavit provides none, that Thomas would have any basis to know any of the things he asserts.

Thomas' protestation that he has not yet conducted discovery.

*Rule 56(f)*

 Rule 56(f), FED.R.CIV.P., provides:

"Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

This Circuit adheres to a four-part test for determining the sufficiency of an affidavit requesting additional time to conduct discovery in order to respond to a summary judgment motion:

"The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994). *Accord, e.g., Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989).

Plaintiff's insurmountable obstacle here is his failure to conduct discovery in a timely manner. This action was commenced in New York Supreme Court, Bronx County, evidently in June 1995. The defendant was served on July 14, 1995 and removed the action to this Court on or about August 9, 1995. On October 23, 1995, after a pretrial conference at which the defendant raised the statutory employer issue, the Court directed the completion of all discovery by May 1, 1996. Defendant initially moved for summary judgment on or about December 28, 1995, more than six months after the commencement of the action. The motion was renewed on March 7, 1995. Yet in his opposing affidavit, sworn to March 18, 1996, plaintiff's counsel stated that "little or no discovery has been had." (Saftler Aff. ¶ 12) Indeed, the only discovery undertaken by plaintiff was the service, on March 5, 1996, of interrogatories, answers to which were due on April 8, 1996. Plaintiff neither has submitted the answers in support of his motion nor complained of any failure to respond or inappropriate objections by defendant. Significantly, although plaintiff has had the affidavit upon which defendant bases its motion since late December, it has never sought, and does not now seek, to depose the affiant.

Plaintiff's conduct has been dilatory. He knew at least as early as October that the defendant would assert the statutory employer defense and knew from defendant's first motion last December exactly what the defendant's argument was. Yet he made no effort whatsoever to conduct any discovery from the commencement of the action in June 1995 until after the first motion for summary judgment had been decided and the second was imminent.[5] Whatever the reason, the delay simply has been too extensive to warrant denial or a continuance of defendant's motion to permit discovery that plaintiff should have taken long ago.

### Conclusion

Defendant's motion to renew and, on renewal, its motion for summary judgment dismissing the complaint for lack of subject matter jurisdiction on the ground that defendant was a statutory employer of plaintiff and plaintiff's sole remedy lies under the VWCA are granted.

SO ORDERED.

---

**5.** This delay may have been tactical rather than inadvertent. As previously noted, plaintiff took the position in the Virginia workers' compensation proceeding, no later than December 20, 1995, that Stone was his statutory employer. He maintained that position until late February, after the first motion for summary judgment was decided. In consequence, plaintiff may well have been reluctant to develop evidence that Stone was not his statutory employer for fear of prejudicing the Virginia proceeding until he obtained a settlement in Virginia that mooted the issue in that forum.