COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, AtLee and Senior Judge Bumgardner
Argued at Norfolk, Virginia


TONY LAMONT PUGH

v.        Record No. 1299-16-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
MAY 23, 2017


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Dean W. Sword, Jr., Judge Designate

Sean Domer, Assistant Public Defender, for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury in the Circuit Court of the City of Suffolk ("trial court") convicted appellant Tony

Lamont Pugh of obtaining money or property by false pretenses, forging counterfeit bills,

uttering counterfeit bills, and identity theft. The jury recommended, and the trial court imposed,

two years in prison for each conviction, yielding a total active sentence of eight years. On

appeal, Pugh argues: (1) there was insufficient evidence of his intent to defraud, an element of

each crime for which he was convicted, and (2) the trial court erred in admitting a copy of the

forged check over his best evidence objection. For the following reasons, we disagree and

affirm.

I. FACTS

"When examining a challenge to the sufficiency of the evidence, an appellate court must

review the evidence in the light most favorable to the prevailing party at trial and consider any

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reasonable inferences from the facts proved." Thomas v. Commonwealth, 279 Va. 131, 155-56, 688 S.E.2d 220, 234 (2010). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" Id. at 156, 688 S.E.2d at 234 (quoting Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005)).

So viewed, the evidence shows that on October 8, 2013, Pugh entered a Walmart store to cash a check for $1,376.12. The check listed "BBISSETTE'S CONCRETE CO." as the payor and Pugh as the payee. A Walmart employee wrote Pugh's license identification number in the endorsement area on the back, then scanned and cashed the check.

At trial, an employee of a Chesapeake-based business named Bissette Construction testified that no business named "Bbissette's Concrete Co." exists and that the routing information on the check Pugh cashed was not affiliated with her company. Instead, the check drew from a PNC bank account affiliated with a chain of salons, "Hair Salon LP." The day Pugh cashed the check, the owner of Hair Salon LP saw that a check she had not issued had drawn from her account. She had not heard of Pugh or Bissette Construction. She reported the fraudulent transaction and contacted the police. Using video surveillance from Walmart, police identified Pugh as the person who cashed the fraudulent check. Pugh was arrested when officers discovered multiple warrants for his arrest during a traffic stop approximately one month later.

Pugh testified that he cashed the check in question, but maintained that he received the check as payment for the sale of a vehicle. He stated he had posted a Craigslist advertisement and met with a prospective buyer in the Walmart parking lot. The buyer arrived with the check made out to Pugh. Although they had agreed to a sale price of $1,400, Pugh stated he accepted the check for a lesser amount as he was eager to sell the vehicle. He did not provide the buyer's name at trial, but described him as a "clean shaven, black guy, little taller than me. Casually

- 2 -

dressed." Pugh claimed that the buyer told him the check was from his employer, who was loaning him the money to purchase the vehicle. At the buyer's suggestion, he and Pugh entered the Walmart so Pugh could cash the check at the store's "money center." After the check cleared, Pugh said he signed the title over to the buyer.

DMV records associated with the automobile showed that on October 10, 2013, Pugh transferred title to someone named Iris Nicole Carver, and listed a sale price for $1,300. Pugh admitted at trial that he had been previously convicted of a dozen felonies, including stealing car stereos, possessing burglary tools, and twice signing his brother's name on a traffic ticket. The trial court took a recess before closing arguments, after which Pugh did not return, so he was not present for the remainder of the proceedings.

II. ANALYSIS

A. *Evidence of Intent*

Pugh does not contest that he presented a forged check; rather, he argues there was inadequate evidence that he knew it was forged, and thus the Commonwealth failed to prove intent to defraud, an element of each of his convictions.

"Possession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged." Walker v. Commonwealth, 25 Va. App. 50, 58-59, 486 S.E.2d 126, 131 (1997) (emphasis omitted) (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 174, 313 S.E.2d 394, 395 (1984)). "Such a prima facie showing of guilt does not rise to the level of a conclusive presumption, and it may be rebutted, but it will warrant submission of the issue of guilt of forgery to the jury, and will support a verdict of guilty if the jury so finds." Fitzgerald, 227 Va. at 174, 313 S.E.2d at 395.

It is undisputed that Pugh exchanged the forged check for cash. The only evidence Pugh presented to rebut the presumption that he forged the check, or procured its forgery, was his own

account of the sale. However, there were numerous reasons the jury could, in its role of judging witness credibility, "disbelieve the self-serving testimony of the accused and . . . conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Under Pugh's theory of innocence, the buyer was the criminal actor, responsible for Pugh facing four felony charges. According to Pugh's own testimony, he possessed, but did not provide, information about the buyer that would have supported his narrative. For example, he did not disclose the alleged buyer's name, although he testified numerous times that the buyer gave it to him. He did not provide any contact information for the buyer, despite testifying that he had screen shots of text message exchanges containing the buyer's cell phone number. When asked if he attempted to contact the buyer after learning of the charges against him, Pugh equivocated: "It's a -- no. I mean well, later on," but did not disclose whether he was successful despite numerous opportunities to do so. In light of this, a jury reasonably could have questioned Pugh's failure to provide more information about the buyer and concluded that he did not do so because he was being untruthful.

Pugh also failed to present other evidence to corroborate his version of events and rebut the presumption that he knew the check was forged. He offered no proof that the Craigslist post advertising the sale of the vehicle existed.[1] He provided no evidence to support his claim that he met with the buyer in the parking lot, or that they entered the Walmart together, such as surveillance footage from when the sale allegedly took place. He did not explain the discrepancy between his description of the buyer as male and the new title holder being female according to

---

[1] Craigslist posts are managed either through a Craigslist account, or via a link emailed to the poster, and thus would generally be available to the individual who created it even after it was no longer viewable publicly. Moreover, Pugh testified that he regularly bought and sold cars and had "a long Craigslist account," suggesting that this failure is not due to his lack of familiarity with the website.

- 4 -

the DMV records. In short, the jury was entitled to disbelieve Pugh, who had a dozen prior felony convictions, including for forgery, and to conclude that his hypothesis of innocence was not reasonable. Because Pugh failed to rebut the presumption that he knew the check was forged when he cashed it, we cannot say that the jury's rejection of Pugh's testimony and decision to convict were plainly wrong.

B. *Best Evidence*

Pugh also argues that the trial court should have sustained his best evidence objection to a copy of the forged check obtained from Hair Salon LP's online bank account. The best evidence rule requires that "where the contents of a writing are desired to be proved, the writing itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted." Brown v. Commonwealth, 54 Va. App. 107, 115, 676 S.E.2d 326, 330 (2009) (emphasis omitted) (quoting Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 885 (1993)). "A trial court's decision to sustain or overrule a best evidence objection, like other decisions about the admissibility of evidence, is reviewed for abuse of discretion." Jennings v. Commonwealth, 65 Va. App. 669, 673, 779 S.E.2d 864, 866 (2015).

Pugh's argument on appeal relies on Virginia Rule of Evidence 2:1003, which addresses admissibility of "substitute checks" over best evidence objections. The Rule was created in response to the "Check Clearing for the 21st Century Act," a federal law that enables banks to process checks electronically through the creation of "substitute checks," rather than physically moving original checks between banks. See Michael J. Weber & Dennis E. McDonnell, Check Please? The "Check 21" Act and Its Impact On Check Fraud Claims, 40 Tort & Ins. L.J. 941 (Spring 2005).

The Rule states:

> (a) Admissibility generally. A substitute check created
> pursuant to the federal Check Clearing for the 21st Century . . .

Act, 12 U.S.C. § 5001 et seq., shall be admissible in evidence in any Virginia legal proceeding, civil or criminal, to the same extent the original check would be.

(b) Presumption from designation and legend. A document received from a banking institution that is designated as a "substitute check" and that bears the legend "This is a legal copy of your check. You can use it the same way you would use the original check" shall be presumed to be a substitute check created pursuant to the Act applicable under subdivision (a) of this Rule.

Pugh argues that the copy of the check admitted here should have been excluded because it does not contain the exact language set forth in quotation marks in Rule 2:1003(b). Instead, the check image here contains the following language: "This is an image of a check, substitute check or deposit ticket. Refer to your posted transactions to verify the status of the item. For more information about image delivery . . . ," followed by contact information for the bank.

Pugh's argument fails for numerous reasons. First, Rule 2:1003 does not set out requirements for admissibility of *any* copy of a check under the best evidence rule; rather, it establishes that "substitute checks," a technical term, are admissible as originals, and sets forth conditions that create a presumption of admissibility under the best evidence rule. Nothing in the record indicates that the check image here was a "substitute check," or that its admissibility is governed by Rule 2:1003. (In fact, the check image's express language indicates that it is "an image of a check, substitute check *or* deposit ticket" (emphasis added), belying any inference that it was necessarily a "substitute check" because it was an electronically-generated check image.) In addition, even if the exhibit is a "substitute check," the omission of the exact language from Rule 2:1003(b) should not require its exclusion — it simply would not receive the *presumption* of admissibility as an original.

Furthermore, "[t]his Court has noted that proper circumstances exist to treat a photocopy as a duplicate original when the accuracy of the photocopy is not disputed." Allocca v. Allocca, 23 Va. App. 571, 580, 478 S.E.2d 702, 706 (1996). On direct, Pugh admitted to cashing a check

with the same amount, payor, and payee as the check image depicted. When asked "Did you cash that check, the check we're all asking about?" he replied "Yes, sir." Accordingly, "[w]hile this Court has long required proof of a case through the most reliable evidence available, . . . [Pugh] has not challenged the content of the [check] as represented in the photocopy." Myrick v. Commonwealth, 13 Va. App. 333, 339, 412 S.E.2d 176, 179 (1991) (quoting Carmody v. F.W. Woolworth Co., 234 Va. 198, 200, 361 S.E.2d 128, 129 (1987)). The trial court did not abuse its discretion in ruling that the check image was admissible over Pugh's best evidence objection.

III. CONCLUSION

Finding no error, we affirm Pugh's convictions.

Affirmed.