Jennifer M. PHILLIPS, Plaintiff,

v.

**HOLLADAY PROPERTY SERVICES, INC., Defendant.**

Civil Action No. 96–01025 (CRR).

United States District Court, District of Columbia.

Aug. 20, 1996.

---

James Lester Kestell, Kestell & Associates, Falls Church, VA, for Jennifer M. Phillips.

Richard Wallace Luchs, David Peter Blackwood, Greenstein, Delorme & Luchs, Washington, DC, for Holladay Property Services, Inc.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

### ORDER

Before the Court in the above-captioned case is the defendant's Motion for Partial

Summary Judgment and the plaintiff's Opposition thereto. Based on the pleadings, the entire record herein, the law applicable thereto, and for the reasons expressed herein, the Court shall grant the defendant's Motion for Partial Summary Judgment with respect to the plaintiff's race and national origin Title VII claims and shall dismiss the plaintiff's common law breach of contract claim for lack of jurisdiction.

## BACKGROUND

This case was originally filed on May 3, 1996. On May 17, 1996, the Court held a Rule 16 status and scheduling conference, and thereafter granted Plaintiff leave to amend her Complaint and issued a scheduling order setting deadlines for discovery, as well as the pre-trial and trial dates. The Court now has before it the Defendant's Motion for Partial Summary Judgment pursuant to Fed.R.Civ.P. 56. Following discovery, the Defendant now asserts that there are no material facts in dispute with regard to Plaintiff's discrimination claims under Title VII of the Civil Rights Act of 1964, *as amended*. The Court agrees, and therefore dismisses Plaintiff's Title VII claim premised on race and national origin discrimination, with prejudice.

In this case, Plaintiff, a former nursing assistant at the Georgetown Retirement Home ("the Georgetown") which is operated by Defendant, claims that she was fired due to her race (African–American) and national origin (Jamaican). *See* Amended Complaint at ¶ 1. Defendant claims that the basis of Plaintiff's termination was insubordination, specifically her failure to lower her voice and "cool it" at a meeting with her supervisor (Ms. Cebe Vicino), even though Ms. Vicino had warned her two times about this behavior. *See* Deposition of Connie Finney at 21:12–18 and Defendant's Exhibit "E". Plaintiff admits that only minutes after Ms. Vicino terminated Plaintiff, she (1) returned to Ms. Vicino's office and said, "I am praying for you" and "You are nothing but a bitch;" and (2) gained access to the intercom system, dialed Ms. Vicino's office and again said,

"You are nothing but a bitch." *See* Plaintiff's Deposition at 178:1 to 181:6.

Plaintiff denies that she raised her voice before Ms. Vicino fired her. *See* Plaintiff's Deposition at 160:18 to 161:6. Furthermore, Plaintiff testified at her deposition that she believes she was terminated because Ms. Vicino mistakenly thought that Plaintiff had defaced a company document. *See id.* at 165:9–10; 205:10–12. Plaintiff also testified that she believes that she was terminated because Defendant mistakenly thought that Plaintiff was supposed to work on a particular Saturday, a day on which Plaintiff did not in fact work. *See id.* at 189:3–9.

## II.

## DISCUSSION

### A. Plaintiff's Burden of Proof

■ To avoid summary judgment, Plaintiff must satisfy the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) and reaffirmed in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Initially, Plaintiff must make out her *prima face* case by showing that (1) she belongs to a protected class or classes; (2) she was qualified for the position of nursing assistant at the time of her termination; (3) she was terminated; and (4) after her termination, her position remained open and was ultimately filled by someone outside of the protected classes.

■ The parties do not dispute that Plaintiff has satisfied all of the elements of her *prima facie* case for her national origin claim. However, they do dispute whether Plaintiff has satisfied the fourth element on her race discrimination claim, because Plaintiff's successor was an African–American.[1] The Court finds that Plaintiff's replacement by an African–American does not necessarily preclude her from establishing a *prima facie* case. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995) (holding that a race-discrimination plaintiff may establish a *prima facie* case of discrimi-

---

1. *See* Defendant's Exhibit "E," ¶ 3.

nation despite the fact that the employer hired someone from the same protected class to fill the vacancy left by the plaintiff); *accord Lockley v. Chao*, 812 F.Supp. 246, 250 n. 5 (D.D.C.1993) (Revercomb, J.). To make out her *prima facie* case, however, Plaintiff must come forward with some evidence showing that "a comparable non-protected person was treated better," i.e., that non-Blacks were not terminated "for the same or similar conduct." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992). As discussed below, Plaintiff has not made this showing.

██ Assuming, *arguendo*, Plaintiff has made out a *prima facie* case of race and national origin discrimination, the second step of the *McDonnell Douglas* framework requires Defendant to articulate—but not prove—that it discharged Plaintiff "for a legitimate, nondiscriminatory reason." *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747 (quotation omitted). Defendant has met this *de minimus* burden by asserting that Plaintiff was terminated for insubordination. Plaintiff does not contest that Defendant has met its burden in her Opposition. Additionally, at her deposition, Plaintiff admitted that if she were insubordinate and disrespectful to Ms. Vicino, that such conduct would have been a legitimate, non-discriminatory reason to discharge her. *See* Plaintiff's Deposition at 217:13–20.[2]

██ Under the third step, Plaintiff must produce evidence from which a rational factfinder could infer that Defendant intentionally discriminated against her because of her race and/or national origin. In order to meet this burden, Plaintiff must proffer "significantly probative," admissible evidence showing that Defendant's articulated reason for her discharge was a pretext for discrimination. *See Hicks*, 509 U.S. at 515, 113 S.Ct. at 2752 (holding that "pretext" means "pretext for discrimination"); *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir.1986) ("The plaintiff [opposing summary judgment] must ... offer specific and significantly probative evidence that the employer's alleged purpose is a pretext for discrimination."). Specifically, Plaintiff's evidence must create a genuine issue *"both* that the reason [offered for her termination] was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515, 113 S.Ct. at 2752 (1993).[3]

As discussed below, Plaintiff's proffered evidence is either inadmissible, immaterial or both. Accordingly, she has not established a *prima facie* case of race discrimination. But even assuming she has, Plaintiff has failed to create a genuine issue of material fact that her termination for insubordination was a pretext for race and/or national origin discrimination.

**B. Plaintiff has failed to create a genuine issue of material fact that she was terminated because of her race.**

██ Plaintiff alleges that a similarly-situated Black, Lawan Snoddy, told Mr. Vicino that "she was not going to show up for work on a day when she was scheduled." Plaintiff's Declaration at ¶ 21. According to Plaintiff, outside of Ms. Vicino's presence, but in the presence of Charge Nurse Connie Fin-

---

2. As noted above, Plaintiff also testified under oath that she believed she was fired not because of insubordination, but because (a) Ms. Vicino erroneously believed she had defaced a company document that had been posted, and/or (b) Defendant erroneously believed that Plaintiff was supposed to work a particular Saturday, a day on which she did not in fact work. However, "the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir.1992) (citations omitted). Additionally, neither of the reasons alleged by Plaintiff is unlawful. That Defendant's mistaken or erroneous perception allegedly motivated her

discharge does not prove discrimination, as a matter of law. *See Holder v. City of Raleigh*, 867 F.2d 823, 829 (4th Cir.1989) ("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination ... Bad or mistaken reasons for a decision may yet be non-discriminatory.") (quotation omitted).

3. *See also id.* at 517–19, 113 S.Ct. at 2753–54 (holding that *"McDonnell Douglas* does *not* say ... that all the plaintiff need do is disprove the employer's asserted reason ... It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.") (emphases in original).

ney, Ms. Snoddy then "used several variation [sic] of four letter words to refer to Ms. Vicino's having scheduled her for the day when she specifically told her that she could not work that day." *Id.* Ms. Snoddy was neither disciplined nor discharged for this conduct. *Id.*

Plaintiff's declaration testimony is unavailing for several reasons. First, it is inadmissible hearsay, and therefore cannot be used by Plaintiff to meet her burden on summary judgment. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence ..."); Fed.R.Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Fed.R.Evid. 802 ("Hearsay is not admissible ..."). Second, Ms. Snoddy purportedly used these "four letter words" outside of Ms. Vicino's presence, to an employee of Defendant who was not responsible for Plaintiff's discharge. *See E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1322 (10th Cir.1992) (plaintiff who was fired for fighting did not create a genuine issue as to pretext where the defendant's evidence showed that "two of the comparable incidents involving less severe punishment ... involved a different supervisor"); *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989) ("[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."). Third, Ms. Snoddy is Black, just like Plaintiff, and therefore Plaintiff's allegation that Ms. Snoddy was treated more favorably than Plaintiff serves only to undermine Plaintiff's race-based disparate treatment claim. *See Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993) (summary judgment for employer affirmed; "a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination"), *cert. denied,* — U.S. ——, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994).

Plaintiff also cites examples of two other Black nurses (Wanda Leys and Fannie Hargrave) who engaged in a number of "heated exchanges" with management, using "four letter words" and colorful phrases like "mother fuckin," but who were not discharged. *See* Plaintiff's Declaration at ¶ 21; Declaration of Wanda D. Leys at ¶ 6; Declaration of Sharon Queen at ¶ 6g. These examples are also replete with evidentiary flaws. The declaration testimony about Hargrave is inadmissible hearsay. *See, e.g.,* Plaintiff's Declaration at ¶ 21 ("I have heard nursing assistant Fannie Hargrave (American born African American) get into some heated discussions with Ms. Mitchell during 1995."). Additionally, these two nurses purportedly acted in an insubordinate fashion to Ms. Mitchell, a non-decisionmaker with respect to Plaintiff's termination.[4] Finally, these examples show that there were Black employees who engaged in insubordinate conduct, but who were not adversely treated, further undermining Plaintiff's allegation of race-based disparate treatment. *See Bush, supra.*

Plaintiff next cites the favorable treatment allegedly afforded the only white nursing assistant at the Georgetown, Stephen Youngstrom. Plaintiff alleges that Mr. Youngstrom "has repeatedly missed work without calling in or otherwise called in his absence late and was never seriously disciplined." Plaintiff's Declaration at ¶ 25. Additionally, Mr. Youngstrom purportedly was allowed to eat in the dining room with his daughter and to engage in lengthy conversations with the residents or members of management, whereas Blacks were "instructed" not to do these things. *Id.* As above, this "evidence" is both inadmissible and immaterial.

First, it consists, in part, of inadmissible hearsay, because Plaintiff fails to identify who, if anyone, "instructed" black nursing assistants that they could not eat in the dining room. *See Miles v. Burris,* 54 F.3d 284, 288 (7th Cir.1995) ("anonymous tip" was inadmissible hearsay); *Thomas v. Stone Container Corp.,* 922 F.Supp. 950, 957 (S.D.N.Y. 1996) (a statement in plaintiff's affidavit

---

4. Plaintiff has pointed to no admissible evidence in the record, nor can the Court find any such evidence, that Ms. Mitchell participated in Ms. Vicino's decision to terminate Plaintiff.

made by an unidentified employee of Defendant was "classic hearsay").[5]

Second, Plaintiff in no way attributes these "instructions" or the alleged preferential treatment enjoyed by Mr. Youngstrom to Ms. Vicino, the manager responsible for Plaintiff's termination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) ("[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, [cannot] satisfy plaintiff's burden ..."); *Garrett v. Lujan,* 799 F.Supp. 198, 200 (D.D.C.1992) (Harris, J.) (granting summary judgment to employer on discrimination claim; holding that "[s]tray remarks by persons not involved in the employment decision-making process are not material to a finding of discrimination unless those remarks are made to the decision-makers and have some impact on the selection process").[6]

Third, Plaintiff's vague and non-specific allegations concerning Mr. Youngstrom's purported absences and his failure to receive "serious[ ]" discipline lacks foundation under Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of this matter."). Indeed, Plaintiff testified that she has no personal knowledge of Mr. Youngstrom's disciplinary record. *See* Plaintiff's Deposition at 98:2 to 99:15.

▮ Fourth, and most importantly, Mr. Youngstrom was not a similarly-situated employee with respect to Plaintiff.

It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects* ... Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) (citations omitted; emphasis in original). At no point does Plaintiff allege that Mr. Youngstrom engaged in insubordinate behavior without being terminated, in contrast to Plaintiff. Nor does she offer any evidence showing that *Ms. Vicino*—the supervisor who fired Plaintiff—treated Mr. Youngstrom more favorably than she treated Plaintiff. *See Id.* at 584 n. 5. Thus, that one white employee enjoyed dining room privileges, or showed up late to work without being disciplined, in no way shows that Ms. Vicino terminated Plaintiff for similar conduct that did not result in the termination of a white employee. In any event, it is not the role of this Court to "disagree with the defendant's conclusion about the relative seriousness" of Plaintiff's misconduct versus Mr. Youngstrom's alleged rules infractions, because Title VII does not hold employers liable for erroneous judgment, unless that judgment is motivated by an illegal discriminatory motivation. *E.E.O.C. v. Flasher Co.,* 986 F.2d 1312, 1322 (10th Cir.1992).[7]

5. Similarly, Ms. Wanda D. Leys states in her declaration that a white, former nursing assistant, Stephen Youngstrom, was allowed to obtain food from the Defendant's dining room and to eat in the dining room, even though "[a]ll black nursing assistants and private duty nurses are given clear instructions not to enter the kitchen and not to eat in the dining room." Declaration of Wanda D. Leys at ¶ 4. This declaration testimony is inadmissible hearsay, because it fails to identify who, if anyone, told black nursing assistants that they could not enter the kitchen or eat in the dining room.

6. Ms. Leys states in her declaration that Matthew Peponis, the white Assistant Director of the

Georgetown, implied in a conversation with her that African–Americans could not use the dining room. Plaintiff's Declaration at ¶ 4. Neither Plaintiff nor Ms. Leys, however, in links Mr. Peponis to the decision to fire Plaintiff, and, therefore his purported statement is, at best, an immaterial "stray remark" by a non-decision-maker.

7. *Accord Fischbach v. District of Columbia, Dep't of Corrections,* 86 F.3d 1180, 1183 (1996) (A court "does not sit as 'super-personnel department that reexamines an entity's business decisions'", and therefore, a court "'may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.'")

In sum, even disregarding the patent evidentiary deficiencies with the declarations proffered by Plaintiff, her submissions at best show that some Blacks and some whites were treated better than she.[8] Consequently, they do not create a genuine issue of race-based disparate treatment, as a matter of law. See Bush, supra.

### C. Plaintiff has failed to create a genuine issue of material fact that she was terminated because of her national origin.

Nor has Plaintiff created a genuine issue as to discrimination based upon her national origin. Plaintiff alleges that Defendant "treats Jamaican employees worse than American born blacks." Plaintiff's Declaration at p. 8, ¶ 24. She cites Vilma Morgan as an example of Defendant's alleged harsh treatment toward Jamaican-born employees. However, there is no admissible evidence in the record identifying Ms. Morgan's country of origin.[9] Even assuming, arguendo, that Ms. Morgan was Jamaican-born, her experience with Defendant does not evidence discrimination. In fact, Plaintiff concedes in her Opposition that Ms. Morgan has "not been disciplined at all" and has been "denied continued employment for reasons unknown." An "unknown" reason is not a discriminatory reason, as a matter of law.

■ The only admissible evidence in the record of a non-Jamaican-born employee being treated more favorably than Plaintiff is an incident in which Ms. Leys got angry at one of Defendant's managers, Ms. Nancy Mitchell, and used the phrase "mother .fuc-

kin," but was not fired. See Declaration of Wanda D. Leys at ¶ 6.[10] This sole example, however, does not create a genuine issue regarding national origin discrimination, because Ms. Mitchell was not the decision-maker responsible for Plaintiff's discharge. See Price Waterhouse and Flasher, supra. Thus, as with Plaintiff's race-discrimination claim, there is no direct or circumstantial evidence of national origin discrimination.

■ In sum, Plaintiff has proffered no direct or circumstantial evidence showing that Ms. Vicino failed to terminate employees outside of Plaintiff's protected classes for similarly insubordinate conduct. In addition, Plaintiff's successor was an African–American, and while this undisputed fact is not dispositive of Plaintiff's discrimination claims (particularly her national origin claim), it is clear from the record herein that Plaintiff's discharge was not due to her race or national origin. At best, Plaintiff has proffered evidence suggesting that her discharge was unfair. However, evidence of unfairness, without more, does not create a genuine issue as to discrimination. See Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C.Cir.1996) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible.") (quoting Pignato v. American Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994)); accord Gomez v. Allegheny Health Services, 71 F.3d 1079, 1086 (3d Cir.1995) ("Title VII does not require employers to treat all employees fairly ... the law limits its protection against that un-

(quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C.Cir.1982) and Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir.1986)).

8. Indeed, one of Plaintiff's declarants states, "Even amongst the black employees, some are treated better than others." Declaration of Wanda D. Leys at ¶ 5.

9. Neither Plaintiff nor the other two declarants state that Ms. Morgan was born in Jamaica, let alone provide any foundation as to how they know Ms. Morgan's country of origin. As Exhibit "C," Plaintiff offers what purports to be the EEOC administrative charge of Ms. Morgan, identifying the complainant's country of origin as Jamaica. It purports to be signed by Ms. Mor-

gan, but the document has not been authenticated in accordance with Fed.R.Evid. 901. Moreover, there is no signature under the text that reads, "I declare under penalty of perjury that the foregoing is true and correct." Therefore, Exhibit "C" is hearsay and contravenes the requirements of 28 U.S.C. § 1746.

10. As discussed above, while Lawan Snoddy and Fannie Hargrave—both American-born employees—allegedly engaged in insubordinate conduct without suffering adverse consequences, the evidence in the record related to them is both inadmissible hearsay and immaterial because the incidents involved a nondecisionmaker with respect to Plaintiff's termination.

fairness to cases of invidious illegal discrimination.") (internal quotation omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 2524, 135 L.Ed.2d 1049 (1996).

## CONCLUSION

For the foregoing reasons, the Court shall grant the defendant's Motion for Partial Summary Judgment with respect to the plaintiff's Title VII claims for race and national origin discrimination and shall dismiss the plaintiff's common law breach of contract claim for lack of jurisdiction. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 20th day of August, 1996,

ORDERED that Defendant's Motion for Partial Summary Judgment shall be and hereby is **GRANTED** with respect to Plaintiff's claims for race and national origin discrimination; and, it is

FURTHER ORDERED that there no longer being any basis for the Court to exercise supplemental jurisdiction over Plaintiff's other claim for breach of contract under 28 U.S.C. § 1367, that claim shall be dismissed, without prejudice, with leave to proceed thereunder in the Superior Court for the District of Columbia to which her remaining claim is hereby remanded pursuant to 28 U.S.C. § 1447(c); and, it is

FURTHER ORDERED in view of the Judgment entered in favor of the defendant on the plaintiff's claims for race and national origin discrimination and the remand referred to above, this case stands dismissed from the docket of this Court, without reaching the merits of the common law breach of contract claim.