**Cheryl BALL, Plaintiff,**

v.

**Donna TANOUE, in her capacity as Chairman, Federal Deposit Insurance Corporation, Defendant.**

**No. Civ.A. 00–00931(ESH).**

United States District Court, District of Columbia.

Feb. 16, 2001.

---

Janet A. Vecchia, Washington, DC, for Plaintiff.

Kirk K. Van Tine, Kelly R. Donovan, Baker Botts LLP, Thomas J. Sarisky, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's motion for summary judgment, plaintiff's opposition and defendant's reply. Plaintiff Cheryl Ball, an African–American female, began her employment with the Federal Deposit Insurance Corporation ("FDIC") in 1991. In April 1996, while plaintiff was employed as a Grade 7 Administrative Assistant ("AA"), she applied for three positions: a different Grade 7 AA position, a Grade 8/9 Assistant Course Administrator ("ACA") position, and a Grade 7/9/11/12 Employee Development Specialist ("EDS") position. In July 1996 plaintiff was promoted to an ACA position at Grade 8. Plaintiff alleges that her non-selection for the EDS position was a result of race discrimination. Plaintiff also alleges that after filing EEOC complaints regarding this non-selection and other matters, she was retaliated against. Defendant contends that plaintiff's non-selection for the EDS position in 1996 was not discriminatory, as evidenced by the fact that two African–Americans received EDS positions at that time. Defendant further argues that plaintiff suffered no adverse action causally related to her statutorily protected EEOC activity. For the reasons discussed more fully below, the Court finds that plaintiff has not established a prima facie case of either discrimination or retaliation, and therefore, summary judgment is granted.

## BACKGROUND

Plaintiff began her employment with FDIC in 1991 in a temporary clerical position, and subsequently she worked in the "Utility Pool." In October 1992, plaintiff received a permanent clerk typist position, and was later promoted to an AA position at Grade 7. On April 5, 1996, plaintiff applied for three positions: a different Grade 7 AA position, a Grade 8/9 ACA position, and a Grade 7/9/11/12 EDS position. (Def.St.¶ 1.) In July 1996 plaintiff was promoted to an ACA position at Grade

8 with an increase in pay. (Def.St.¶ 2.) The five available EDS positions were filled by three white individuals and two African–American individuals. (Def. St.¶ 3.) The three entry-level EDS positions were filled by Angela Sanford and Nadine Simon, two whites, and Lisa Wilson, an African–American. (Def.St.¶ 4.) All three were promoted from Grade 9 ACA positions to EDS positions. (Def.St. ¶ 5.) At the time plaintiff applied for the three positions, she was in a Grade 7 AA position. (*Id.*) Plaintiff alleges that she was not selected for the EDS position because of her race. Plaintiff also alleges that Kathryn Zielinski, a white employee, was more favorably treated than plaintiff throughout her career at the FDIC because of her race. Plaintiff contends that after she filed an EEOC complaint regarding her non-selection for the EDS position in 1996, she was the victim of retaliation.

## LEGAL ANALYSIS

### I. Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### II. Discrimination

In order to state a prima facie case of discrimination under Title VII, plaintiff must establish: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999). In the failure to hire context, the prima facie case requires a showing that (1) plaintiff is a member of a protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications she was rejected; and (4) either someone not of her protected class filled the position or the position remained vacant and the employer continued to seek applicants. *Cones v. Shalala,* 199 F.3d 512, 516 (D.C.Cir.2000). It is undisputed that of the five EDS positions, two were filled by African–Americans, including one of the entry level positions. (Def.St.¶ 3.) This Court has held that under such circumstances, plaintiff cannot establish a prima facie case. *Ramsey v. Derwinski,* 787 F.Supp. 8, 11 (D.D.C.1992) ("Plaintiff's non-selection must be viewed in the context of the hiring for all four positions. In addition to the black man who was selected for the specific position plaintiff sought, a black woman, a white man and a black man were selected. That fact virtually eliminates any inference of discrimination on the basis of sex or race."). *See also Brody,* 199 F.3d at 451 ("On [plaintiff's] ... claim [of] non-selection for a desired lateral transfer, the dis-

trict court correctly observed that any sexual discrimination claim would be baseless because two of the three employees selected for the transfer were women.").

Plaintiff argues, citing *Phillips v. Holladay Property Servs.*, 937 F.Supp. 32, 35 (D.D.C.1996), *aff'd without op.*, 1997 WL 411695 (C.A.D.C. June 19, 1997), that she can satisfy the fourth element of the prima facie case by creating an inference of discrimination based on a claim that similarly situated white employees were treated better. However, to be considered " 'similarly situated,' the individuals with whom the plaintiff seeks to compare [ ]her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 37 (citation omitted); *see also Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999) ("A plaintiff must ... demonstrate that all of the relevant aspects of her employment situation were nearly identical to those" of the comparators) (citation omitted).

Plaintiff argues that the three white candidates who were hired in EDS positions in 1996 (Nadine Simon, Angela Sanford, and Kay Zielinski) were similarly situated to plaintiff. This argument is, however, belied by the undisputed facts. Each of these three women was employed in a different position, at a higher grade, with a different supervisor,[1] and different job responsibilities than plaintiff. When they applied for the EDS positions, Simon and Sanford were in Grade 9 ACA positions and Zielinski was in a Grade 11/Temporary Grade 12 EDS position. (Def.St. ¶ 5; Pl.St. ¶ 4.)[2] Given these differences, their selection over plaintiff does not show disparate treatment or raise an inference of discrimination.

Plaintiff also argues that these individuals were more favorably treated in that when Sanford and Simon were ACA's, they were provided with EDS-type job assignments that enhanced their ability to be selected in 1996 for the EDS positions. Plaintiff essentially argues that these individuals were more qualified, or at least more likely to be selected, because of the superior training and experience they had at the FDIC. That Simon and Sanford were given EDS-type responsibilities while they were in ACA positions does not show disparate treatment, since plaintiff, before competing for the EDS job, was in an AA position.[3] That they received different responsibilities in different positions does not show disparate treatment. Plaintiff has not established that they "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Phillips*, 937 F.Supp. at 37.

With respect to Zielinski, plaintiff argues essentially that Zielinski's career path at FDIC has been more favorable than her own, beginning with her promotion to a Grade 7 temporary EDS position in 1993. There is no evidence, and plaintiff does not argue, that plaintiff applied for that position in 1993. There is simply no relevance to what Zielinski has done throughout her tenure at FDIC. The only similarity is that they began their

---

1. *See* FDIC Reply at 11–12 (citing deposition testimony).

2. Simon had been an ACA since 1992, Sanford had been an ACA since 1994, and Zielinski had first been promoted to a temporary EDS position in 1993. (Def.St.¶¶ 4, 7.)

3. Plaintiff's claim that after she was not selected for the EDS position in 1996 but was instead hired to the ACA position, she still did not receive such EDS-type responsibilities, does not assist her in establishing a prima facie case of discrimination in her 1996 nonselection. Moreover, plaintiff concedes that the assignment of such duties was at the discretion of the individual supervisor (Opp. at 26), and as such, could not be a term or condition of the ACA position.

careers at FDIC within one year of each other, in similar, but not identical positions, and ultimately both aspired to and applied for EDS positions. This evidence is insufficient to establish that "all of the relevant aspects of her employment situation were nearly identical to those" of Zielinski. *Holbrook*, 196 F.3d at 261. Even if Zielinski were similarly situated to plaintiff at some point during their tenure at FDIC and received a benefit that plaintiff did not receive (but did apply for), this would not suffice to establish disparate treatment in the 1996 EDS selection process.[4] Because plaintiff has failed to establish a prima facie case of discrimination, the Court will grant summary judgment to defendant on the discrimination claims.

### III. Retaliation

■ Plaintiff filed her first EEOC complaint on November 12, 1996, regarding her non-selection for the EDS position. (Def.Ex.5.) She claims that this was followed by numerous acts of retaliation by her supervisors and colleagues. In order to establish a prima facie case of retaliation, plaintiff must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. *Brody*, 199 F.3d at 452. To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Brody*, 199 F.3d at 457. "Mere idiosyncrasies of personal preference are not sufficient to create an injury." *Id. See also Jones v. Billington*, 12 F.Supp.2d 1, 13 (D.D.C.1997) ("[N]ot everything that makes an employee unhappy is an action-

able adverse action.") (citation and quotation marks omitted), *aff'd without op.* 1998 WL 389101 (D.C.Cir. June 30, 1998). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. Washington Metropolitan Area Transit Authority*, 102 F.Supp.2d 24, 29 (D.D.C.2000) (citation and quotation marks omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268–69, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

■ The first allegedly retaliatory act was plaintiff's assignment to the DOS/DCA Registration Desk in March 1997. Plaintiff claims that this job was more complicated than her previous assignment at the TCSB Registration Desk, and that she did not receive adequate training to perform the job well. A lateral transfer with no diminution of pay or benefits is not an adverse action absent "some other materially adverse consequences ... such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brody*, 199 F.3d at 457. *See also Childers v. Slater*, 44 F.Supp.2d 8, 21 (D.D.C.1999) ("Courts have held that reassignment within a division, without demotion or corresponding reduction in salary or benefits does not constitute adverse action. The plaintiff does not offer any evidence to suggest that her reassignment from an international

---

4. Similarly, the claims of Stephanie Overton Clark, one of the African–American candidates who was selected for the EDS positions in 1996, that Zielinski and Sanford received more favorable treatment than she did while at the FDIC, and that her supervisor Mr. Mihall treated Sanford better than he treated Overton Clark, has no relevance to whether plaintiff was the victim of discrimination or whether she has established a prima facie case. Similarly, the opinion of an African–American FDIC official, Stephen Anderson, that minorities historically have not had the same opportunities at FDIC cannot serve as proof of a prima facie case.

program manager to the project leader ... had any corresponding negative effect on her salary, benefits, responsibilities, stature or otherwise. Thus, she has not established that the reassignment constituted an adverse action.") (citations omitted). Plaintiff alleges no change in salary or benefits, or other materially adverse consequences. The fact that she was not fully prepared to perform all of the functions of this position when she first assumed the position or the fact that her performance was criticized by Mr. Mihall does not constitute an adverse action. *See Childers*, 44 F.Supp.2d at 20 ("A reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action.").

■ Plaintiff also contends that she was ostracized by her co-workers after she filed her EEOC complaint. She alleges they would "stay away from her" and "look away from her or drop their heads[s] when she would walk into a room." (Opp. at 14.) The fact that plaintiff believes she got the cold shoulder from her co-workers does not constitute a materially adverse consequence or disadvantage in the terms and conditions of her employment so as to establish an adverse personnel action. *See, e.g., Williams v. City of Kansas City*, 223 F.3d 749, 754 (8th Cir.2000) ("[Defendant's] silent treatment [of plaintiff] is at most ostracism, which does not rise to the level of an actionable adverse employment action."); *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir.1996) ("[M]ere ostracism in the workplace is not enough to show an adverse employment decision.").

■ Plaintiff claims that the May 2, 1997 e-mail from Dan Luczak, Acting Assistant Director, to all employees in plaintiff's branch announcing which employees were on leave for the day is another example of retaliation. (Def.Ex. 8, 12.) At the end of the e-mail, Luczak includes a sentence under the heading "Did you know?" describing the origin of the term "to get fired," not the origin of the word "Clans" as plaintiff claims. (Def.Ex. 12; Opp. at 14.) This comment cannot be construed as having any racial connotation. Moreover, the fact that it was sent to the entire branch negates any possible inference that it was sent in retaliation for plaintiff's filing of an EEOC complaint six months earlier.

■ Plaintiff also claims that someone left a racially derogatory memo about "The Ant and The Grasshopper" on her desk in November 1997. "For comments to rise to the level of adverse employment action, the conduct must be so egregious as to alter the conditions of employment." *Henry v. Guest Services, Inc.*, 902 F.Supp. 245, 252 (D.D.C.1995) (adopting Title VII standard for ADA cases) (citation and quotation marks omitted). Because plaintiff has presented no evidence that her receipt of this memo altered the conditions of her employment, it is not an adverse action. *See id.* ("As offensive as it must have been for the Plaintiff to discover a cartoon poking fun at his disability, Plaintiff has presented no evidence that such conduct was so severe or pervasive as to alter the conditions of his employment.").[5]

Plaintiff also alleges that while she had consistently received "good to outstanding performance evaluations" prior to her November 1996 EEOC complaint, her December 1997 evaluation following her assignment to the DOC/DCA Registration Desk was "fully successful," which she disagreed with. Plaintiff also claims that the "marginal" performance evaluation that she received in November 1999 after filing her third EEOC complaint in October 1999

---

**5.** Moreover, plaintiff has presented no evidence that a supervisor or anyone in management placed the memo on her desk. *See id.* ("Plaintiff has presented no evidence to show that management was responsible for placing the cartoon in his mailbox. Nor has Plaintiff shown that management personnel knew that Plaintiff's coworkers were harassing him, yet failed to take remedial action.").

constitutes a retaliatory adverse action. According to plaintiff, while part of the reason for the 1997 evaluation was failure to meet deadlines, plaintiff "disagrees that she agreed to or had input in the deadlines imposed on her." (Opp. at 16.) "This court has held that the fact that a plaintiff receives a lower performance evaluation than she thought she deserved does not constitute adverse action sufficient to make a prima facie case of discrimination and reprisal." *Childers*, 44 F.Supp.2d at 20 (finding no adverse action where plaintiff received evaluation of "fully successful" with which she disagreed). *See also Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996) ("There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action.... [Plaintiff] has not identified, nor have we discovered, a single case where adverse performance ratings alone were found to constitute adverse action."); *Brown v. Bentsen*, 921 F.Supp. 1 (D.D.C.1995) ("The fact that plaintiff received lower performance evaluations than she thought that she deserved does not necessarily constitute adverse action sufficient to make out a prima facie case. Plaintiff did not point to any negative consequences that flowed from the allegedly low performance evaluations.").[6]

■ Moreover, the "fully successful" evaluation was given approximately ten months after plaintiff filed her EEOC complaint. Plaintiff offers no evidence of causation other than that the evaluation followed the complaint. "While a causal nexus is inferred when the adverse employment action occurs shortly after participation in protected activity," where the alleged retaliation occurs "almost a full year after plaintiff's most recent complaint ... [t]he length of time between plaintiff's EEO activity and the adverse employment decision is too great to support an inference of reprisal." *Garrett v. Lujan*, 799 F.Supp. 198, 202 (D.D.C.1992). In addition, in her *first* evaluation after the EEOC complaint in November 1996, plaintiff received an "outstanding" rating. (Opp.Ex. 20.) Plaintiff initiated an informal EEO process in August 1996 (Reply Ex. 15), which both of the 1996 reviewers, Ms. Ramiah and Mr. Mihall, were aware of before her formal complaint on November 12, 1996. (*See* Opp.Ex. 32; Reply Ex. 15.) The fact that plaintiff's first evaluation after she filed an EEOC complaint was "outstanding" further undermines any causal link between the 1996 complaint and the 1997 evaluation.[7] *See Carpenter v. Federal National Mortgage Ass'n*, 174 F.3d 231, 236 (D.C.Cir.1999) (citing *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1136 (7th Cir.1997), for the proposition that an intervening satisfactory rating defeats causal link).

■ With respect to the November 1999 "marginal" evaluation, there is no evidence that the two reviewers (Mihall and Singer) had any knowledge of plaintiff's October 1999 EEOC complaint. The November 1996 and March 1998 EEOC complaints were filed three years and 18 months earlier, respectively, and thus, cannot support an inference of causation. *Lujan*, 799 F.Supp. at 202. Plaintiff claims that beginning in March 1998 she was involved in the class action litigation against FDIC, "an action about which all her supervisors must have been aware." Opp. at 42. However, plaintiff offers no

---

6. Contrary to plaintiff's argument, there is no evidence, other than plaintiff's self-serving statement, that these performance ratings had any impact on the 1999 EDS selection process. Moreover, there is no evidence that plaintiff was entitled to both a higher evaluation and a cash award, as plaintiff claims. *See Russ v. Van Scoyoc Associates, Inc.*, 122 F.Supp.2d 29, 33 (D.D.C.2000) (loss of bonus is not adverse employment action if plaintiff had only a subjective expectation that she would receive bonus); *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir.1996) (holding that "loss of a bonus is not an adverse employment action ... where employee is not automatically entitled to the bonus").

7. This evaluation was presented to plaintiff on November 19, 1996. (Opp.Ex.20.)

evidence that either Mihall or Singer were in fact aware of her participation in that litigation.

Finally, plaintiff argues that her non-selection for an EDS position in July 1999 was retaliatory. Plaintiff contends that the African–American female hired for the position was significantly less qualified. Plaintiff presents nothing but her own speculation that her non-selection was a result of the EEOC complaints she filed almost 16 months (March 1998) and two and a half years (November 1996) earlier. This is insufficient to establish a prima facie case of retaliation. *See Lujan,* 799 F.Supp. at 202. *See also Saunders v. Di-Mario,* 1998 WL 525798 (D.D.C. August 14, 1998) ("The greater the time that elapses between the protected activity and the alleged acts of retaliation, however, the more difficult it is to demonstrate any causal connection and, absent any other evidence, where the gap is sufficiently great it is appropriate to grant judgment for the defendant as a matter of law."), *aff'd,* 194 F.3d 175 (D.C.Cir.1999) (table decision) ("Because the time lapse between the alleged EEO activity and the non-selection is so considerable [8–10 years], and given the scant evidence produced by appellant, appellant has not demonstrated a causal link between the protected activity and the adverse action."); *Bieber v. Runyon,* 1996 WL 525372 (D.D.C. Sept. 9, 1996) (finding no prima facie case where "[plaintiff] has offered nothing but speculation to link her [December 1989] non[-]selection to her July 1989 administrative complaint").

Plaintiff also filed an EEOC complaint in June 1999 regarding alleged racial threats and comments.[8] There is, however, no evidence that either the interviewing officials or Ms. Ramiah, the selecting official, was aware of this complaint. Similar-ly, as discussed above, the fact that plaintiff was involved in class action litigation cannot establish causation absent evidence that the decisionmaker was aware of plaintiff's involvement. There is no such evidence with respect to these three individuals. Moreover, the suit was initiated in March 1998, 16 months before plaintiff's non-selection for the EDS position.

Plaintiff argues that evidence other than temporal proximity can establish that decision-makers had discriminatory or retaliatory animus, citing *Kilpatrick v. Riley,* 98 F.Supp.2d 9 (D.D.C.2000). In *Kilpatrick,* the Court noted that evidence other than temporal proximity could establish causation, including evidence that "decisionmakers responsible for the alleged retaliation harbored discriminatory animus against the employee's 'protected class' or harbored a desire to 'get back at' the particular employee for his exercise of some protected right." *Id.* at 23 n. 19. There is no evidence in this case, however, that any of the decisionmakers involved in the allegedly of retaliatory acts harbored any discriminatory or retaliatory animus. Mr. Luczak's e-mail does not suggest racial or retaliatory animosity. Moreover, he was not a decisionmaker. While the anonymous memo could be construed to indicate discriminatory animus, it cannot be attributed to any of the decisionmakers. Plaintiff argues that its very existence indicates the racially charged and retaliatory atmosphere of the office. However, it is evidence only of the racial attitudes of one unidentified individual and cannot form the basis of a finding of retaliatory causation.[9] Plaintiff has therefore failed to establish a prima facie case of retaliation.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to

---

8. These factual allegations are not the basis of plaintiff's claims in the present lawsuit.

9. Similarly, Overton Clark's testimony, which plaintiff refers to but does not quote or pro-vide any citation to, establishes only her opinion that Mihall had a retaliatory animus toward her. It does not bear on plaintiff's situation.

establish a prima facie case with respect to either race discrimination or retaliation. Accordingly, defendant's motion for summary judgment is granted. A separate order will accompany this opinion.